Nos. 25-2182, 25-2312 (consol.)

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| SHANICE MATHEWS, as guardian *ad litem* and on behalf of her son, D.W., | ) ) ) | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| Plaintiff-Appellant/Cross-Appellee, | ) ) | |
| | ) | |
| v. | ) | No. 1:18-cv-06675 |
| | ) | |
| STATE OF ILLINOIS, ILLINOIS STATE POLICE, J.B. PRITZKER, and BRENDAN F. KELLY, | ) ) ) | |
| | ) | The Honorable |
| Defendants-Appellees/Cross-Appellants. | ) ) | JOAN B. GOTTSCHALL, Judge Presiding. |

**COMBINED RESPONSIVE AND OPENING BRIEF
OF DEFENDANTS-APPELLEES/CROSS-APPELLANTS**

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000

**SAMANTHA SHERMAN**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 793-1273 (office)
(773) 590-7803 (cell)
Samantha.Sherman@ilag.gov

Attorneys for Defendants-Appellees/
Cross-Appellants

# TABLE OF CONTENTS

*Page*

JURISDICTIONAL STATEMENT ................................................................................... 1

ISSUE PRESENTED FOR REVIEW ............................................................. 3

STATEMENT OF THE CASE ......................................................................... 4

SUMMARY OF THE ARGUMENT .............................................................. 19

ARGUMENT ................................................................................................... 20

I.      The standard of review is *de novo*...................................................... 20

II.     The district court correctly held that plaintiff lacked Article III standing. ..... 21

        A.      Plaintiff's injury is not fairly traceable to the challenged conduct of
                the State Police............................................................................ 22

        B.      Plaintiff's injury is not likely to be redressed by her proposed
                regulation...................................................................................... 29

                1.      The State Police lacks authority to promulgate the rule that
                        plaintiff seeks. .............................................................. 30

                2.      Plaintiff's requested relief improperly seeks to control
                        defendants' discretionary enforcement decisions......................... 42

III.    Plaintiff failed to state a claim under the Rehabilitation Act or the Illinois Civil
        Rights Act. .................................................................................... 47

        A.      Plaintiff failed to state a claim under section 504 of the Rehabilitation
                Act. ............................................................................................ 47

                1.      Plaintiff did not identify any existing "program or activity" that
                        her child is entitled to participate in or receive benefits from. ... 49

                2.      Plaintiff did not plausibly allege that the State Police
                        discriminated against her child "solely because of" his
                        disability. ...................................................................... 51

        B.      Plaintiff failed to state a claim under the Illinois Civil Rights Act. ....... 53

1.  Plaintiff did not identify any specific "criteria or methods of administration." ............................................................................. 56

2.  Plaintiff did not plausibly allege that the State Police caused any racially disparate impact. ............................................................... 57

IV.   This court should deny plaintiff's motion to certify two questions of state law that are not uncertain and that need not be resolved to affirm the district court's dismissal. ................................................................................. 59

CONCLUSION ............................................................................................ 60

CERTIFICATE OF COMPLIANCE WITH PAGE LIMIT, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

CERTIFICATE THAT ALL REQUIRED MATERIALS ARE INCLUDED IN APPENDIX OF PLAINTIFF-APPELLANT/CROSS-APPELLEE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Page(s)*

*Adams v. City of Indianapolis,*
  742 F.3d 720 (7th Cir. 2014)................................................................. 55,

*A.H. by Holzmueller v. Ill. High School Ass'n,*
  881 F.3d 587 (7th Cir. 2018)................................................................. 53

*Alexander v. Choate,*
  469 U.S. 287 (1985) ..............................................................50, 51, 53

*Alexander v. Sandoval,*
  532 U.S. 275 (2001) ...............................................................54, 55

*Allen v. Brown Advisory, LLC,*
  41 F.4th 843 (7th Cir. 2022) ................................................................. 20

*Allen v. Wright,*
  468 U.S. 737 (1984) ................................................................. 25

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................. 21

*Cary v. Ne. Ill. Reg'l Commuter R.R. Corp.,*
  No. 19-cv- 3014, 2020 WL 1330654 (N.D. Ill. Mar. 22, 2020) ............................ 55

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983). .............................................................. 45, 46

*Coalition for Safe Chi. Cmtys. v. Village of Riverdale,*
  No. 215 CH 10390, 2016 WL 1077293 (Ill. Cir. Ct. Feb. 25, 2016) .................... 57

*Conners v. Wilkie,*
  984 F.3d 1255 (7th Cir. 2021)................................................................. 52

*Daniels v. Indus. Comm'n,*
  201 Ill. 2d 160 (2002) ................................................................. 30, 34

*Davis v. Ill. Dep't of Hum. Servs.,*
  137 F.4th 641 (7th Cir. 2025) ................................................................. 21

*Dep't of Educ. v. Brown,*
  600 U.S. 551 (2023) ................................................................. 13, 45

*Dinerstein v. Google, LLC,*
  73 F.4th 502 (7th Cir. 2023) ................................................................. 22, 48

iii

*Eastman Kodak Co. v. Fair Emp. Practices Comm'n,*
   86 Ill. 2d 60 (1981) .......................................................................................... 39, 40

*EEOC v. Chi. Miniature Lamp Works,*
   947 F.2d 292 (7th Cir. 1991) ................................................................................ 57

*FDA v. Alliance for Hippocratic Medicine,*
   602 U.S. 367 (2024) ...................................................... 22, 23, 25, 28, 29, 30, 43, 45

*Good Shepherd Manor Found., Inc. v. City of Momence,*
   323 F.3d 557 (7th Cir. 2003) ................................................................................ 52

*Haaland v. Brackeen,*
   599 U.S. 255 (2023) ................................................................................... 20, 31, 42

*Heckler v. Chaney,*
   470 U.S. 821 (1985) .............................................................................................. 44

*H.P. by W.P. v. Naperville Cmty. Unit Sch. Dist. #203,*
   910 F.3d 957 (7th Cir. 2018) ................................................................................ 48

*Ill. Bell Tel. Co. v. Ill. Com. Comm'n,*
   362 Ill. App. 3d 652 (4th Dist. 2005) ................................................................... 32

*Ill. Bell Tel. Co. v. Ill. Comm. Comm'n,*
   203 Ill. App. 3d 424 (2d Dist. 1990) .................................................................... 36

*Ill. Dep't of Revenue v. Ill. Civ. Serv. Comm'n,*
   357 Ill. App. 3d 352 (1st Dist. 2005) .................................................................... 32

*Jackson v. Cerpa,*
   696 F. Supp. 2d 962 (N.D. Ill. 2010) ................................................................... 55

*Jadair Int'l, Inc. v. Am. Nat'l Prop. & Cas. Co.,*
   77 F.4th 546 (7th Cir. 2023) ................................................................................ 60

*Johnson v. Amazon.com Servs. LLC,*
   142 F.4th 932 (7th Cir. 2025). ....................................................................... 59, 60

*Julie Q. v. Dep't of Child. & Fam. Servs.,*
   2013 IL 113783 ............................................................................................... 32, 38

*Kean v. Wal-Mart Stores, Inc.,*
   235 Ill. 2d 351 (2009) ..................................................................... 17, 31, 32, 37

*Levin v. Ret. Bd. of Cnty. Emps. & Offs. Annuity & Benefit Fund,*
   2019 IL App (1st) 181167 .................................................................................... 38

*Lewis v. AbbVie Inc.*,
   152 F.4th 807 (7th Cir. 2025) ............................................................. 20

*McQueen v. City of Chicago*,
   803 F. Supp. 2d 892 (N.D. Ill. 2011) ................................................... 55

*Morgan v. Fed. Bureau of Prisons*,
   129 F.4th 1043 (7th Cir. 2025) ........................................................... 21

*Nat'l Shooting Sports Found. v. James*,
   No. 22-1374 (2d Cir. 2023) ................................................................. 28

*O'Brien v. Caterpillar Inc.*,
   900 F.3d 923 (7th Cir. 2018) ............................................................... 56

*Orr v. Shicker*,
   147 F.4th 734 (7th Cir. 2025) ............................................................. 20

*People v. Clark*,
   2019 IL 122891 ................................................................................. 32

*People v. Henry*,
   398 Ill. App. 3d 1019 (3d Dist. 2010) ................................................. 39,

*Powell v. Illinois*,
   No. 19-3144 (7th Cir. 2021) ............................................................... 10

*Roberts v. City of Chicago*,
   817 F.3d 561 (7th Cir. 2016) ............................................................... 48

*RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*,
   672 F.3d 476 (7th Cir. 2012) ........................................................... 53-54

*Schalz v. McHenry Cnty. Sheriff's Dep't Merit Comm'n*,
   113 Ill. 2d 198 (1986) ................................................. 31-32, 37, 38, 40

*Shakman v. Pritzker*,
   43 F.4th 723 (7th Cir. 2022) ............................................................... 46

*Smith v. City of Jackson*,
   554 U.S. 228 (2005) ....................................................................... 55, 56

*Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Proj., Inc.*,
   576 U.S. 519 (2015) ........................................................................... 58

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ....................................................................... 27, 43

*United States v. Texas*,
 599 U.S. 670 (2023) .........................................13, 20, 21, 22, 30, 43, 44, 45, 46, 47

*Waggoner v Lemmon*,
 778 F.3d 586 (7th Cir. 2015).....................................................................50, 52, 53

*Wards Cove Packing Co. v. Atonio*,
 490 U.S. 642 (1989) ...........................................................................................58

*Washington v. Ind. High Sch. Athletic Ass'n*,
 181 F.3d 840 (1999)............................................................................................49

*Wilkins v. City of Chicago*,
 736 F. Supp. 3d 616 (N.D. Ill. 2024) .................................................................55

*Wis. Cmty. Servs., Inc. v. City of Milwaukee*,
 465 F.3d 737 (7th Cir. 2006)..................................................................49, 51, 52, 53

**Statutes and Regulations**

18 U.S.C.
 § 922(a)(6) ..........................................................................................................28
 § 922(g)(11) .........................................................................................................25
 § 923(g)(3)(A).......................................................................................................26
 § 932(b)................................................................................................................28

28 U.S.C. § 2107(a) ....................................................................................................1

29 U.S.C. § 794 .............................................................................1, 10, 48, 49, 51

42 U.S.C.
 § 12131(2).............................................................................................................51
 § 12132 ..................................................................................................................9

20 Ill. Admin. Code § 1232.90.................................................................................8

20 ILCS 2605/2605-15 .................................................................................15, 36, 42

430 ILCS
 66/1 *et seq*...........................................................................................................5
 65/0.01 *et seq* ....................................................................................................5
 68/5-10 ..............................................................................................6, 7, 31, 32, 50
 68/5-15 .........................................................................6, 7, 15, 16, 27, 32, 31, 49
 68/5-30 ......................................................6, 7, 15, 16, 27, 32, 36, 41, 42
 68/5-40 ...............................................................................................................6, 31
 68/5-50 ....................................................................................................................6
 68/5-60 .............................................................................................................6, 7, 32
 68/5-85 ..........................................................................................................*passim*

68/5-95 ............................................................................................ 8, 35

68/5-100 .......................................................................................... 8, 35

720 ILCS

5/24-4 ......................................................................................... 26, 27

5/24-3.5 ............................................................................................ 28

740 ILCS 23/5(a)(2) ........................................................... 1, 3, 9, 54, 56, 57

815 ILCS

505/2DDDD(b) ..................................................................8, 9, 25, 34, 35

505/7 .................................................................................................. 9

505/10A(a) ........................................................................................ 35

27 C.F.R. § 478.124 ................................................................................. 26, 28

27 C.F.R. § 478.129(b) ................................................................................... 26

Ill. Pub. Act 100-1178, art. 5 (2019) ............................................................ 6

Ill. Pub. Act 100-1178, art. 10 (2019) .......................................................... 5

Ill. Pub. Act 102-0016, art. 35 (2021) .......................................................... 5

Ill. Pub. Act 102-0237 (2021) ..................................................................... 11

Ill. Pub. Act 102-1116 (2023) ....................................................................... 5

Ill. Pub. Act 103-0559 (2023) ....................................................................... 8

Ill. Pub. Act 103-1065 (2025) ....................................................................... 5

**Rules**

Ill. Sup. Ct. R. 20(a) .................................................................................. 60

Fed. R. App. P. 4(a)(1)(A) ............................................................................ 3

Fed. R. App. P. 4(a)(3) ................................................................................. 3

Fed. R. Evid. 201(b) ..................................................................................... 7

**Other Authorities**

Bureau of Alcohol, Tobacco, Firearms & Explosives,
*Don't Lie for the Other Guy* (Jan. 14, 2026) ........................................ 7

Ill. Governor's Off. of Mgmt. & Budget, *Ill. State Budget, Fiscal Year 2027* .............. 6

Press Release, *Governor Pritzker Signs FOID Modernization Bill* (Aug. 2, 2021) ..... 11

# JURISDICTIONAL STATEMENT

The jurisdictional statement of Plaintiff-Appellant/Cross-Appellee Shanice Mathews, as guardian *ad litem* and on behalf of her son, D.W. ("plaintiff"), is not complete and correct. As required by 7th Cir. R. 28(b), Defendants-Appellees/Cross-Appellants State of Illinois, Illinois State Police, JB Pritzker, and Brendan F. Kelly ("defendants") provide this statement.

On October 24, 2023, plaintiff filed a fourth amended complaint, the operative one in this case, claiming that defendants violated the Rehabilitation Act, 29 U.S.C. § 794(a), and the Illinois Civil Rights Act, 740 ILCS 23/5(a)(2). Doc. 178. As discussed below, *infra* Part II, the district court lacked subject-matter jurisdiction over the action because plaintiff failed to allege Article III standing. The district court otherwise had subject-matter jurisdiction over the Rehabilitation Act claim under 28 U.S.C. § 1331 because it raised a federal question, and over the Illinois Civil Rights Act claim under 28 U.S.C. § 1367(a) because it was so related to the federal Rehabilitation Act claim as to form part of the same case or controversy for purposes of supplemental jurisdiction.

On June 13, 2025, the district court granted defendants' motion to dismiss the action for lack of subject-matter jurisdiction, disposing of all claims against all parties. Doc. 212. On the same day, the court entered a separate judgment on the docket pursuant to Fed. R. Civ. P. 58. Doc. 213. No motion to alter or amend the judgment was filed.

Plaintiff filed a notice of appeal on July 11, 2025, which was within 30 days of the entry of the judgment and thus timely. Doc. 214; 28 U.S.C. § 2107(a); Fed. R.

App. P. 4(a)(1)(A).  Defendants filed a notice of cross-appeal on July 23, 2025, Doc.

218, which was within 14 days of plaintiff's notice of appeal and thus timely, *see* Fed.

R. App. P. 4(a)(3).  This court has jurisdiction over these appeals from a final

judgment under 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1.      Whether the district court correctly held that plaintiff lacked Article III standing, where she failed to allege an injury-in-fact that was traceable to defendants and that could be redressed by the district court.

2.      Whether, in the alternative, plaintiff failed to state a claim upon which relief could be granted because she did not plausibly allege (a) that her child has been denied access to any "program or activity" or otherwise subject to discrimination "solely by reason of" his disability as required under section 504 of the Rehabilitation Act, and (b) that any specific "criteria or methods of administration" have subjected plaintiff's child to "discrimination because of [his] race, color, national origin, or gender" as required under the Illinois Civil Rights Act, 740 ILCS 23/5(a)(2).

3.      Whether this court should deny plaintiff's motion to certify to the Illinois Supreme Court two questions of state law, where those questions are not uncertain and need not be resolved to affirm the district court's dismissal.

## STATEMENT OF THE CASE

In 2018, three plaintiffs brought suit against the State of Illinois, its Governor, its State Police, and its State Police Director, claiming that they were denying Chicago-based public schoolchildren a reasonable disability accommodation and discriminating against them on the basis of race by failing to sufficiently regulate firearm dealers in order to "limit the gun violence to which these children are exposed." Doc. 1 at 1, 13-14. Specifically, plaintiffs asserted that the State's "failure to adopt these needed regulations" on dealers "ha[d] caused more guns to flow onto Chicago's streets," leading to higher rates of gun violence that inflicted trauma on children, and in particular African-American children, impacting their educational performance and thus "imped[ing] . . . children from participating in the State's program of public education." *Id.* at 2, 26, 28.

Not long after the complaint was filed, the State enacted a series of gun-safety laws that provided virtually all of the relief that plaintiffs originally sought. *See infra* p. 11. Following several motions to dismiss, multiple amended complaints, and extensive briefing, the remaining plaintiff in this case narrowed her request for relief, seeking a court order compelling the State Police to promulgate and enforce a rule pursuant to one of these new laws that would obligate dealers to fill out a checklist listing signs of potential straw purchasers (*i.e.*, individuals who are purchasing a gun on behalf of someone who cannot legally purchase one). *See* Doc. 212 at 1-2. Defendants argued that the district court lacked jurisdiction to effectuate that request for numerous reasons, including because plaintiff's theory of injury was

attenuated and speculative, because the State Police lacked the authority to promulgate the regulation plaintiff sought, and because plaintiff sought to impermissibly control the State Police's discretionary enforcement priorities. Doc. 192. The district court agreed and dismissed the action for lack of subject-matter jurisdiction. Doc. 212. This court should affirm.

**Legal Background**

Illinois has an extensive statutory and regulatory framework intended to address the public health crisis of gun violence. This includes longstanding laws, such as license requirements for firearm possession and concealed carriage. *See, e.g.*, Firearm Owners Identification Card Act ("FOID Act"), 430 ILCS 65/0.01 *et seq.* (comprehensive shall-issue licensing regime for firearm possession); the Firearm Concealed Carry Act, 430 ILCS 66/1 *et seq.* (same for concealed carriage). It also includes more recent reforms, including many enacted in the years since the original complaint in this action was filed. *See, e.g.*, Karina's Law, Ill. Pub. Act 103-1065 (2025) (strengthening laws authorizing the State Police to protect domestic violence victims by confiscating guns of abusers); Protect Illinois Communities Act, Ill. Pub. Act 102-1116 (2023) (prohibitions on assault weapons and other unusually dangerous arms, as well as large-capacity ammunition feeding devices); Reimagine Public Safety Act, Ill. Pub. Act 102-0016, art. 35 (2021) (creating Office of Firearm Violence Prevention to provide grants and other assistance to communities most affected by gun violence); Gun Trafficking Information Act, Ill. Pub. Act 100-1178, art. 10 (2019) (measures to track information related to firearms used in crimes). And the State

5

has consistently budgeted millions of dollars toward these efforts, much of which is specifically allocated to communities that experience the highest levels of gun violence. *See, e.g.*, Ill. Governor's Off. of Mgmt. & Budget, *Ill. State Budget, Fiscal Year 2027*, at 20 (proposing $111 million allocation to Reimagine Public Safety Act programs for 2027 fiscal year).[1]

Of particular relevance to this case is the Firearm Dealer License Certification Act ("Dealer Certification Act"), which regulates firearm dealers operating in Illinois. *See* Ill. Pub. Act 100-1178, art. 5 (2019), codified as amended at 430 ILCS 68/5-1 *et seq.* Businesses that sell, lease, or otherwise transfer firearms must maintain a "valid certificate of license" under the Dealer Certification Act. 430 ILCS 68/5-15. The Act provides that the State Police "shall" issue a certificate of license to a dealer who provides proof of a valid federal firearms license and submits a valid application. *Id.* § 5-10; *see also id.* § 5-15(h)(i); *id.* § 5-40(a). Certified dealers must comply with certain obligations, such as installing video recording systems, *id.* § 5-50(a), maintaining safe storage plans, *id.* § 5-55, implementing electronic recordkeeping system to track inventory, *id.* § 5-65, and completing training and continuing education requirements, *id.* §§ 5-30, 5-60. Relevant here, these training requirements include educating dealers about "indicators of a straw purchase." *Id.*

_____

[1] https://tinyurl.com/9cwn52p6. This court may judicially notice information on official government websites "that is not subject to reasonable dispute." *See* Fed. R. Evid. 201(b); *see also Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003).

§ 5-60.[2] The term "straw purchase" generally refers to an illegal transaction in which a buyer who is legally able to purchase a firearm does so on behalf of another individual (typically someone who is prohibited from making the purchase). *See, e.g.*, Bureau of Alcohol, Tobacco, Firearms & Explosives, *Don't Lie for the Other Guy* (Feb. 18, 2026).[3]

The Dealer Certification Act also provides the State Police with the authority to exercise its discretion to investigate, discipline, and impose penalties on dealers that violate the Act's provisions. Section 5-85 provides that the State Police "may refuse to renew or restore, or may reprimand, place on probation, suspend, revoke, or take other disciplinary or non-disciplinary action against any [dealer]" for 11 specific offenses. *See* 430 ILCS 68/5-85(a). As relevant here, these enumerated offenses include "(1) [v]iolations of this Act, or any law applicable to the sale or transfer of firearms," and "(2) [a] pattern of practice or other behavior which demonstrates incapacity or incompetency to practice under this Act." *Id.*

Four sections of the Dealer Certification Act authorize the State Police to implement the Act's requirements via rulemaking. *See, e.g.*, *id.* § 5-10 (authorizing State Police to adopt rules for checking the validity of a dealer's federal license); *id.* § 5-55 (authorizing rulemaking regarding the adequacy of a dealer's safe storage plan); *id.* §§ 5-30, 5-60 (authorizing rulemaking regarding training and continuing

---

[2] The current training modules are available on the State Police's website at https://tinyurl.com/3f5dpbvy.

[3] https://tinyurl.com/yc6mz2e2.

education requirements).  The State Police has promulgated regulations consistent with this authority.  *See, e.g.*, 20 Ill. Admin. Code § 1232.90 (requiring dealers to complete State Police's annual training).  No provision of the Act authorizes the State Police to promulgate rules under section 5-85 regarding the 11 offenses that can trigger the State Police's discretionary authority to discipline dealers.  Instead, the Act provides that section 5-85 "shall" be enforced through individualized adjudicatory proceedings in which the State Police determines whether a specific dealer "violated" or "failed to comply with the conditions required in" the Act.  430 ILCS 68/5-95(b)-(e), 5-100(a).

In 2023, Illinois enacted another gun-safety law, the Firearm Industry Responsibility Act ("FIRA"), which amended the Illinois Consumer Fraud and Deceptive Business Practices Act by designating certain dangerous practices by firearm dealers as "unlawful practice[s]" for purposes of that Act.  *See* Ill. Pub. Act 103-0559 (2023), codified as amended at 815 ILCS 505/2DDDD.  Specifically, FIRA provides that it is an "unlawful practice" for a firearm dealer, "through the sale . . . of a firearm-related product," to "[k]nowingly create, maintain, or contribute to a condition in Illinois that endangers the safety or health of the public by conduct either unlawful in itself or unreasonable under all circumstances."  815 ILCS 505/2DDDD(b).  A dealer violates this provision by, among other things, "failing to establish or utilize reasonable controls," which can include "reasonable procedures, safeguards, and business practices that are designed to . . . prevent the sale or

distribution of a firearm-related product to a straw purchaser." *Id.*

§ 2DDDD(b)(1)(A).

As part of the Consumer Fraud and Deceptive Business Practices Act, the provisions of FIRA may be civilly enforced by the Illinois Attorney General or a State's Attorney. *See* 815 ILCS 505/7. In addition, FIRA provides a private cause of action for private plaintiffs who suffer "actual damage" as a result of a dealer's violation. *Id.* § 10a. Violations of FIRA do not carry criminal penalties. *See id.* § 7.

**Procedural Background**

### Original Complaint

In 2018, Demetria Powell, as guardian *ad litem* and on behalf of her son D.P.; Tanya Reese, as guardian *ad litem* and on behalf of her son M.R.; and Tywanna Patrick, as guardian *ad litem* and on behalf of her granddaughter J.C., filed a putative class action in the district court seeking declaratory and injunctive relief for alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Illinois Civil Rights Act, 740 ILCS 23/5(a)(2) ("ICRA"). Doc. 1. Plaintiffs alleged that defendants were discriminating against Chicago-area schoolchildren on the basis of race and disability because they had failed to "limit the gun violence to which these children are exposed." *Id.* at 1. In their ADA claim, plaintiffs asserted that defendants' failure to use the State's "regulatory authority to reduce [ ] gun related violence" limited plaintiffs' ability to "obtain[ ] the full benefit of public education available to children who are not exposed to such gun violence." *Id.* at 26. In their ICRA claim, plaintiffs asserted that defendants' failure to "issue reasonable

gun trafficking regulations in order to reduce the level of gun violence" had an "adverse impact on African-American children." *Id.* at 28. Plaintiffs asked the court to enter an injunction requiring defendants to implement a broad range of reforms, including imposing "mandatory obligations" on dealers to install video recording systems, take possession of suspended or revoked FOID cards, submit to regular audits of inventory, design and implement safe storage plans, conduct background checks on employees, and participate in a tracking system designed to trace guns used in crimes. *Id.* at 13-14; *see also id.* at 26-29.

Defendants moved to dismiss, arguing that plaintiffs lacked Article III standing and failed to state claim. Doc. 25 at 4-16, 18-20. Defendants also argued that plaintiffs' ADA claims were barred by the State's sovereign immunity under the Eleventh Amendment. *Id.* at 16-18. The district court rejected these arguments, but dismissed the claims of certain plaintiffs who no longer resided in Illinois. Doc. 37 at 16.

Defendants filed an interlocutory appeal of the portion of the court's order denying their sovereign-immunity defense. Doc. 45. That appeal was dismissed after plaintiffs filed an amended complaint, adding additional plaintiffs and opting to pursue their federal claims under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, instead of the ADA. *See Powell v. Illinois*, No. 19-3144, Doc. 25 (7th Cir. 2021) (order dismissing appeal); *see also* Doc. 94 at 2 (noting that altering claims would "moot the interlocutory appeal").

**First, Second, and Third Amended Complaints**

By the time the interlocutory appeal was dismissed in 2021, Illinois had enacted an extensive series of new gun-safety laws. This included the Dealer Certification Act, which provided much, if not all, of the relief plaintiffs requested in the original complaint. *See* Doc. 39 at 9-14 (comparing the relief requested in plaintiffs' complaint to the Act's provisions). It also included other reforms, such as significant measures to modernize and support the FOID card system, expansion of background check requirements for firearm sales, the creation of a stolen gun database, and substantial increases in funding for gun violence prevention efforts in communities most affected by violence. *See* Ill. Pub. Act 102-0237 (2021); *see also* Press Release, *Governor Pritzker Signs FOID Modernization Bill* (Aug. 2, 2021).[4] In response, the nature of plaintiffs' allegations in subsequent pleadings shifted to focus on the manner in which the State Police was implementing and enforcing these new laws.

Plaintiffs' first amended complaint sought an injunction ordering the State Police to "require gun dealers to comply" with a list of "responsible business practices" provided by plaintiffs; to reallocate the State Police's resources to "enforce the FOID Act in Cook County," to investigate "patterns of straw purchase sales," and to "revoke the licenses" of dealers; and to otherwise "use their full authority under [the Dealer Certification Act], the FOID Act, and the Gun Trafficking Information Act." *See* Doc. 97 at 33-35.

---

[4] https://tinyurl.com/mp2d3ejk.

Defendants moved to dismiss the first amended complaint, again arguing that plaintiffs lacked Article III standing and failed to state a claim under Fed. R. Civ. P. 12(b)(6). Doc. 106. In addition to arguing that plaintiffs had not satisfied Article III's traceability and redressability requirements, defendants pointed out that plaintiffs now impermissibly sought to superintend the State Police's discretionary decisions regarding its regulation of third parties under these newly enacted laws. *Id.* at 11-13. Defendants also argued that plaintiffs failed to state a claim for disability discrimination under the Rehabilitation Act, the sole claim that plaintiffs included in the first amended complaint. *See id.* at 13-18.

 In lieu of responding, plaintiffs sought and were granted leave to file a second amended complaint. Docs. 113, 114. The second amended complaint was substantially similar to the first, but it included a claim for racial discrimination under ICRA, which plaintiffs stated was unintentionally omitted. Doc. 115. Defendants again moved to dismiss for lack of Article III standing and for failure to state a claim under section 504 of the Rehabilitation Act or ICRA. Doc. 116.

After the parties had fully briefed that motion, the district court directed plaintiffs to file a third amended complaint withdrawing Powell as a plaintiff because she no longer resided in Chicago. Doc 137. The third amended complaint named Mathews, on behalf of her child and a putative class of similarly situated children, as the sole plaintiff. Doc. 139. With the agreement of the parties, the court applied the defendants' pending motion to the third amended complaint without rebriefing. Doc. 137.

The court also ordered supplemental briefing on two recent Supreme Court decisions that addressed Article III standing: *United States v. Texas*, 599 U.S. 670 (2023), and *Dep't of Educ. v. Brown*, 600 U.S. 551 (2023). Doc. 170. Defendants explained that this Supreme Court precedent confirmed that Article III does not confer standing on parties to challenge the government's underenforcement of its laws, including "'gun laws.'" Doc. 173 at 2 (quoting *Texas*, 599 U.S. at 681).

The district court granted defendants' motion to dismiss the third amended complaint. Doc. 175. The court explained that plaintiff sought two forms of relief: "(1) an order requiring Illinois officials to enforce more vigorously existing laws governing gun dealers; and (2) an order compelling defendants to alter gun dealer licensure rules to require dealers to use 'responsible business practices' intended to detect straw purchasers." *Id.* at 30-31. The court concluded that "the Supreme Court's recent decision in *Texas* deprive[d] plaintiff of standing to seek the first form of relief, and the [complaint] contained insufficient allegations supporting redressability with respect to the second form of relief." *Id.* at 31. Although the court recognized that "Chicago has a long-standing problem of endemic gun violence," *id.* at 30 (cleaned up), "the allegations [of the third amended complaint] fail[ed] to demonstrate that it is likely, as opposed to speculative, that a regulation requiring responsible business practices as described in the [third amended complaint] will redress the ongoing injuries to the proposed class and appreciably abate the daily gun violence that afflicts their communities," *id.* 30-31. The court granted plaintiff leave to amend. *Id.* at 31.

**Operative Fourth Amended Complaint**

In October 2023, plaintiff filed the operative fourth amended complaint, which again raised claims under the Rehabilitation Act and ICRA. Doc. 178. Plaintiff again alleged that defendants had failed to properly exercise their authority under the Dealer Certification Act, but now focused specifically on her view that the State Police had acted unlawfully by not doing more to ensure that "licensed Illinois dealers . . . follow and use responsible business practices with each sale and refuse to sell guns to persons when indicators of a straw sale are present," thus contributing to the "flow of illegal 'crime guns' circulating in neighborhoods where children like [plaintiff's child] live." Doc. 178 at 9-10. Specifically, plaintiff alleged that she sought "to require" defendants "to condition renewal of licenses of Illinois firearm dealers on their documented compliance with responsible business practices designed to prevent sales to persons when there are indications of straw purchasing." *Id.* at 1.

In briefing, plaintiff clarified that she sought an injunction requiring the State Police to adopt a rule that would (1) "'require that licensed gun dealers in counties adjacent to or near Chicago keep and produce electronic records showing that the dealers use the Brady checklist or a similar checklist authorized by the [State Police],'" and (2) "'notify dealers in writing that failure to provide such records at the time of relicensing for inspection by [State Police] will subject the dealers to disciplinary sanctions set out under 430 ILCS [68/5-85], including the denial of the relicensing of such dealer.'" Doc. 212 at 1-2 (quoting Doc. 209 at 3-4).

The "Brady checklist" plaintiff referred to was a screening questionnaire drafted by the Brady Center to Prevent Gun Violence (which represented plaintiff before the district court) that asks dealers to record answers to questions related to potential indicators of a straw purchase, such as "Is the purchaser buying the gun for himself or herself?"; "What is the intended use of the firearm?"; "Is anyone with the purchaser?"; "Do you have doubts as to whether the purchaser is buying the gun for him or herself, or whether he or she may be a gun trafficker?"; and other questions. *See* Doc. 178-4 at 1-2. According to plaintiff, the State Police had the authority to promulgate her proposed regulation under the provision of the Dealer Certification Act authorizing the State Police to promulgate regulations related to training and continuing education, 430 ILCS 68/5-30; the disciplinary provision of the Act, *id.* § 5-85; or, alternatively, under the State Police's general rulemaking authority, 20 ILCS 2605/2605-15. *See* Doc. 212 at 2.

Defendants moved to dismiss on several grounds, including those raised in their prior motions. Doc. 185. Defendants also argued that plaintiff failed to allege Article III standing for the additional reason that the State Police lacked the statutory authority to promulgate the rule that plaintiff sought. *Id.* Defendants further argued that plaintiff's complaint contained specific allegations only with respect to the State Police, and thus that the claims against the State of Illinois, Governor Pritzker, and Director Kelly should be dismissed. *Id.* at 21-22. In response, plaintiff agreed to dismiss Governor Pritzker and Director Kelly, noting

that "the State and the Illinois State Police are sufficient as Defendants."  Doc. 192 at 15.

The district court dismissed the fourth amended complaint because plaintiff lacked Article III standing.  Doc. 212.  Specifically, the court concluded that plaintiff's injuries could not be redressed by the injunction sought because the State Police lacked authority to promulgate plaintiff's proposed regulation.  *Id.* at 7-8.   The court first noted that the Dealer Certification Act enumerated "eleven criteria for which the [State Police] 'may' discipline a firearm dealer, including by declining to renew the dealer's license," and that these criteria did not include a requirement to use, and keep record of, a Brady checklist for each sale.  *Id.* at 2-3 (citing 430 ILCS 68/5-85). Because, under basic principles of statutory interpretation, "an enumeration of criteria in a statute is interpreted to exclude items not on the list," the court held that the Dealer Certification Act did not authorize the State Police to "promulgate regulations adding a twelfth criterion to the above list — making non-renewal of a license mandatory ('must') instead of discretionary ('may') when the new criterion applies."  *Id.* at 2-4.

The district court likewise rejected plaintiff's argument that the State Police could promulgate her proposed regulation under section 5-30 of the Dealer Certification Act, which authorized the State Police to "adopt rules regarding continuing education for certified licensees related to . . . the sale or transfer of firearms."  *Id.*  The court held that section 5-30 was "an express grant of rulemaking

authority as to 'continuing education' only," not a "backdoor way of expanding the [State Police's] regulatory authority." *Id.* at 5-6.

The district court also rejected plaintiff's argument that the State Police's general rulemaking authority in its enabling statute, the Illinois State Police Law, could authorize the State Police to impose her substantive condition of licensure via regulation. *Id.* at 4. It was long established under Illinois law, the court explained, that agencies' "regulations can neither expand nor limit the statute they enforce." *Id.* (quoting *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 372 (2009)). Plaintiff thus could not use the State Police's enabling statute "to engraft a license non-renewal rule onto the Dealer Certification Act." *Id.*

Lastly, the district court rejected plaintiff's argument that the enactment of FIRA somehow expanded the scope of the State Police's rulemaking authority under the Dealer Certification Act. *Id.* at 6. "FIRA added to the list of unlawful practices that may give rise to civil liability to a private plaintiff who experiences actual damages, but FIRA d[id] not modify the criteria the [State Police] should apply when deciding to renew a dealer's license." *Id.* (cleaned up).

Because "defendants ha[d] no authority to promulgate the regulations [plaintiff] propose[d]," plaintiff's injury could not be redressed by the injunction she sought, and she therefore lacked Article III standing. *Id.* at 8. The district court did not reach defendants' alternative arguments. *Id.* at 2, 9. Because plaintiff had "repeatedly failed to cure standing defects in her complaints," the court entered

judgment dismissing the case without prejudice for lack of subject-matter jurisdiction. *Id.* at 8-9.

**Proceedings on Appeal**

Plaintiff appealed the court's dismissal of the action under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction, Doc. 214, and defendants filed a protective cross-appeal to argue, in the alternative, that dismissal with prejudice under Fed. R. Civ. P. 12(b)(6) was warranted because plaintiff failed to state a claim upon which relief could be granted, Doc. 218. Plaintiff then filed a motion to certify two questions of state law to the Illinois Supreme Court: whether the State Police has the statutory authority (1) "to require Cook County dealers seeking annual renewal of their licenses . . . to produce digital or other records that show such dealers are following responsible business practices at the time of the sale of their firearms," and (2) "to deny renewal of the licenses of those Cook County dealers who fail or refuse to follow responsible business practices." 7th Cir. Doc. 15. Defendants filed a response arguing that certification was not warranted. 7th Cir. Doc. 20. First, defendants explained that this case did not present any uncertain question of state law requiring the assistance of the Illinois Supreme Court. *Id.* at 7-9. Second, defendants explained that certification was inappropriate because there were alternative grounds upon which this court could affirm. *Id.* at 9-11. This court entered an order indicating that it would take the motion with the appeal. 7th Cir. Doc. 21.

## SUMMARY OF THE ARGUMENT

The district court correctly held that it lacked jurisdiction over this case because plaintiff lacked Article III standing to pursue the relief that she sought in her fourth amended complaint: an injunction ordering the State Police to promulgate a rule requiring Chicago-area dealers to "'keep and produce electronic records showing that the dealers use the Brady checklist or a similar checklist'" designed to identify potential straw purchasers. Doc. 212 at 1-2 (quoting Doc. 209 at 3-4). First, plaintiff's alleged injury (trauma from exposure to third-party gun violence) is not fairly traceable to the challenged conduct of the State Police. The causal chain that links plaintiff's proposed regulation (or lack thereof) to the levels of gun violence her child experiences is too attenuated for purposes of Article III's traceability standard, as it depends on the downstream consequences of decisions by numerous third parties not before the court. And, given the extensive existing gun-safety measures already in place in Illinois, it is entirely speculative that plaintiff's proposed regulation would have any measurable impact on the level of gun violence to which her child is personally exposed.

Second, plaintiff's injury is not likely to be redressed by her requested injunction compelling the State Police to promulgate her checklist regulation. In addition to the fundamental traceability issues, which likewise preclude redressability, the State Police lacks the authority to promulgate the regulation that plaintiff seeks. Thus, an injunction compelling the State Police to promulgate such a rule would not provide "legally enforceable protection" against plaintiff's alleged

injury, *Haaland v. Brackeen*, 599 U.S. 255, 293 (2023), because any such regulation would be void under Illinois law.

Third, plaintiff's suit seeks to improperly control enforcement decisions that are committed to the State Police's discretion, and such disputes are not "traditionally redressable in federal court."  *Texas*, 599 U.S. at 676.

In the alternative, dismissal was nonetheless warranted because plaintiff failed to state a claim for disability discrimination under the federal Rehabilitation Act and for racial discrimination under the Illinois Civil Rights Act.  Plaintiff's complaint failed to identify any specific way in which the State Police's current practices discriminate against protected groups.  Instead, she argues that those statutes impose a free-standing obligation on the State Police to undertake *additional* efforts any time those measures might benefit protected groups.  That proposition is contrary to the plain text of the statutes and the precedent applying them.

## ARGUMENT

## I.     The standard of review is *de novo*.

This court reviews *de novo* a district court's decision on a motion to dismiss for lack of standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).  *See Orr v. Shicker*, 147 F.4th 734, 739 (7th Cir. 2025).  At the pleading stage, the court accepts the factual allegations in the fourth amended complaint as true and draws all reasonable inferences in plaintiff's favor.  *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022).  The court may affirm on any basis supported by the record.  *Lewis v. AbbVie Inc.*, 152 F.4th 807, 813 (7th Cir. 2025).

**II.    The district court correctly held that plaintiff lacked Article III standing.**

"Article III of the Constitution confines the federal judicial power to 'Cases' and 'Controversies.'" *Texas*, 599 U.S. at 675.  This constitutional requirement "helps safeguard the Judiciary's proper — and properly limited —  role" by "prevent[ing] the judicial process from being used to usurp the powers of the political branches." *Id.* at 675-76 (cleaned up).  As the party invoking federal jurisdiction, plaintiff must demonstrate that she satisfies the three elements of Article III standing:  "(1) she suffered an injury-in-fact; (2) the injury is traceable to the challenged conduct of [the defendant]; (3) the injury is likely to be redressed by a favorable judicial decision." *Davis v. Ill. Dep't of Hum. Servs.*, 137 F.4th 641, 647 (7th Cir. 2025).  To carry this burden at the pleading stage, "the plaintiff must clearly allege facts demonstrating each element of standing for each form of relief he seeks." *Morgan v. Fed. Bureau of Prisons*, 129 F.4th 1043, 1048 (7th Cir. 2025) (cleaned up).  "Threadbare recitals" of Article III's requirements "supported by mere conclusory statements" are insufficient; rather, a complaint must contain "well-pleaded facts" that permit the court to infer that it is "plausible" — not merely "possib[le]" — that the plaintiff has standing. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

As the district court correctly concluded, plaintiff's standing allegations fail to meet this bar.  First, plaintiff's alleged injury-in-fact (trauma from exposure to gun violence) is not fairly traceable to the challenged conduct of the State Police (the

failure to require dealers to follow her proposed checklist regulation).[5]  Second,

plaintiff has not plausibly alleged that her injury would likely be redressed by the

relief she has sought because, as the district court held, the State Police has no

authority to promulgate plaintiff's proposed regulation.  Doc. 212 at 4-7.  Third,

plaintiff's injury is "not of the kind 'traditionally redressable in federal court,'"

because Plaintiff improperly seeks to control enforcement decisions that are

committed to the State Police's discretion.  *FDA v. Alliance for Hippocratic Medicine*,

602 U.S. 367, 381 n.1 (2024) (quoting *Texas*, 599 U.S. at 676).

## A.    Plaintiff's injury is not fairly traceable to the challenged conduct of the State Police.

To start, Plaintiff's injury is not fairly traceable to the conduct that she has

challenged here:  the State Police's failure to require, under the Dealer Certification

Act, dealers to "'produce electronic records showing that the dealers use the Brady

checklist or a similar checklist'" designed to identify potential straw purchasers.

Doc. 212 at 1-2 (quoting Doc. 209 at 3-4); *accord* AT Br. 16.

Traceability is "usually easy to establish" in cases where a challenged

government regulation "require[s] or forbid[s] some action by the plaintiff."  *All. for*

---

[5]  Plaintiff's complaint contains specific allegations only with respect to the State
Police, and plaintiff has conceded that neither the Governor nor the Director of the
State Police are proper defendants.  *See supra* pp. 15-16.  Likewise, plaintiff's
opening brief on appeal develops arguments only with respect to the State Police, and
not the State of Illinois.  Plaintiff thus has waived her claims against all defendants
other than the State Police.  *See Dinerstein v. Google, LLC*, 73 F.4th 502, 512 (7th
Cir. 2023).  Accordingly, this brief refers only to the State Police.  But, in any event,
plaintiff's claims with respect to any defendant would fail for all the reasons
discussed below with respect to the State Police.

*Hippocratic Medicine*, 602 U.S. at 382. Here, however, it is undisputed that plaintiff is not directly regulated by the Dealer Certification Act, as she does not seek to do business as a firearm dealer. "[W]hen (as here), a plaintiff challenges the government's unlawful regulation (or lack of regulation) of *someone else*, standing is not precluded but is ordinarily substantially more difficult to establish." *Id.* (cleaned up; emphasis in original). That is because, under such circumstances, the causal chain linking the defendant's challenged action and the plaintiff's injury is often "too attenuated" or "too speculative" to satisfy the traceability standard. *Id.* at 383. The causal chain that plaintiff relies on suffers from both flaws.

At the threshold, plaintiff's theory of injury is "too attenuated" to satisfy the traceability inquiry. *Id.* As the Supreme Court has explained, the causation requirement embedded in traceability "rules out attenuated links — that is, where the government action is so far removed from its distant (even if predictable) ripple effects that the plaintiffs cannot establish Article III standing." *Id.* In *FDA v. All. for Hippocratic Med.*, for example, the Court rejected the plaintiff doctors' standing argument that the FDA's relaxation of certain regulatory requirements for mifepristone would cause more women to suffer complications from the drug, and, in turn, cause the doctors to suffer various harms associated with treating these patients. *Id.* at 390-93. The Court held that the doctors failed to establish that their injuries were fairly traceable to the FDA's conduct not only because they were "speculative," but "perhaps more to the point," because they were "too attenuated." *Id.* at 390-91.

The causal chain that plaintiff relies on here is similarly attenuated, as it is contingent upon independent choices made by dealers, would-be straw purchasers, and ultimately individuals who are barred from legally purchasing weapons. *See id.* ("The government repeals certain restrictions on guns — does a surgeon have standing to sue because he might have to operate on more gunshot victims? The answer is no: The chain of causation is simply too attenuated."). Indeed, plaintiff argues, in brief, that if the State Police adopted her checklist regulation, then (1) dealers would use the checklist at each sale; (2) dealers would decline to sell guns to straw purchasers to whom they would have otherwise made sales; (3) individuals prohibited from purchasing guns legally would be unable to obtain new guns via straw purchasers; (4) those individuals would commit fewer crimes of gun violence; and thus (5) plaintiff's child would be exposed to fewer incidents of gun violence. *See, e.g.*, AT Br. 9-10 ("lawsuit seeks to require the State Police to enforce State law by having gun dealers use the Brady Checklist . . . to ensure that gun dealers employ responsible business practices when they sell a gun, and, thereby prevent the illegal practice of straw purchases from occurring" and thus "reduce the level of illegal gun violence from straw purchases"). This sort of drawn-out causal chain is particularly unusual in light of the claims that plaintiff asserts here for failure-to-accommodate a disability under the Rehabilitation Act and for racial discrimination under ICRA, which require a direct causal relationship between the defendant's alleged action and the discriminatory harm to the plaintiff. *See infra* Parts III.A.2, III.B.2. Allowing plaintiffs to pursue claims based on these kinds of attenuated, downstream effects of

government policy decisions improperly places the courts in the position of "'virtually continuing monitors of the wisdom and soundness' of government action." *All. for Hippocratic Med.* at 384 (quoting *Allen v. Wright*, 468 U.S. 737, 760 (1984)).

Furthermore, for similar reasons, plaintiff's theory is too speculative, since plaintiff has not sufficiently alleged that the additional regulation she claims the State Police has unlawfully withheld — requiring gun dealers to use the Brady checklist and to produce records showing compliance with that directive — would meaningfully abate the gun violence to which plaintiff's child will be exposed in ways beyond those addressed by the existing statutory scheme. Nor could she, given the extensive civil and criminal framework that already operates to incentivize dealers to avoid, and punish dealers who engage in, straw sales. *See, e.g.*, 18 U.S.C. § 922(g)(11) (felony offense for dealer to sell firearm "knowing or having reasonable cause to believe" that it is a straw sale). This legal framework includes FIRA, which exposes dealers to civil liability if they "knowingly create, maintain, or contribute to" a dangerous condition by failing to use reasonable business practices to prevent straw sales. 815 ILCS 505/2DDDD(b). It also includes discipline under the Dealer Certification Act, which *already* authorizes the State Police, in its discretion, to take a wide range of disciplinary action against dealers who, for example, have "received, directly or indirectly, compensation for any firearms sold or transferred illegally," 430 ILCS 68/5-85(a)(7); violated any law applicable to the sale of firearms, *id.* § 5-85(a)(1); or engaged in a "pattern or practice or other behavior which demonstrates incapacity or incompetency to practice under this Act," *id.* § 5-85(a)(2).

Dealers' existing legal obligations under this framework include screening and record-keeping requirements that are similar to those that plaintiff would impose via her checklist regulation. For example, plaintiff's checklist requires dealers to ask, and to record the buyer's answers to, questions such as: "Is the purchaser buying the gun for himself or herself?"; "What is the intended use of the firearm?"; "Is the purchaser . . . buying other guns or products?" *See* Doc. 178-4 at 1-2. The checklist also requires dealers to state whether they "have doubts as to whether the purchaser is buying the gun for him or herself, or whether he or she may be a gun trafficker[.]" *Id.* at 2. But dealers are *already* legally obligated to answer these questions and to keep a record of these answers for each sale. *See, e.g.*, 27 C.F.R. § 478.124(c)(1) (dealer "shall obtain a Form 4473 from transferee showing . . . certification that the transferee does not intend to purchase or acquire any firearm for sale or disposition to a person . . . prohibited" from possessing a firearm); *id.* § 478.124(c)(4) (dealer must attest that dealer "does not know or have reasonable cause to believe that the transferee is disqualified by law from receiving the firearm"); *id.* § 478.129(b) (dealer must "retain each Form 4473 until business or licensed activity is discontinued"); 18 U.S.C. § 923(g)(3)(A) (dealers must "prepare a report of multiple sales or other dispositions whenever the [dealer] sells . . . at one time or during any five consecutive business days, two or more pistols, or revolvers"); 720 ILCS 5/24-4 (dealers must keep record of each sale, including "the kind, description and number of the weapon, and the purpose for which it is purchased or obtained").

Further, the State Police already has the authority to inspect dealers' records. *See, e.g.*, 430 ILCS 68/5-30 ("During an inspection, licensees shall make all records . . . accessible for inspection upon the request of the Illinois State Police . . . ."); 720 ILCS 5/24-4(c) (dealer must "produce for inspection" sale records to peace officer). If the State Police finds that a dealer has violated any of these recordkeeping laws, it may exercise its discretion to discipline the dealer in accordance with section 5-85 of the Dealer Certification Act which, again, authorizes the State Police to discipline dealers for a "[v]iolation[ ] of . . . any law applicable to the sale of firearms," among other things. *Id.* § 5-85(a)(1).

By plaintiff's own account, this existing regulatory framework is largely effective: "most dealers" are already "knowledgeable as to [responsible business] practices and comply with them by refusing to sell to persons who are straw purchasers." Doc. 178 at 22. Instead, plaintiff alleged that "only a few dealers are the problem. Just *five percent* of dealers supply 90 percent of the crime guns." *Id.* (emphasis in original).

Given this extensive array of existing requirements and the State Police's authority to enforce them, plaintiff has not plausibly alleged that her proposed regulation is likely to change the practices of these "few dealers" in a way that would measurably reduce her child's exposure to gun violence, *id.*, as she must do to satisfy Article III, *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (plaintiff must personally satisfy standing requirements, "class action or not"). Likewise, plaintiff has not plausibly alleged that her preferred policy is likely to change the behavior of

buyers in ways beyond the effects of the extensive regulatory framework that already exists.  Indeed, a successful straw purchaser is already subjecting herself to serious federal and state criminal liability, including for lying on a federal form, which is a felony offense.  *See* 720 ILCS 5/24-3.5(b)-(c); 18 U.S.C. § 932(b); 18 U.S.C. § 922(a)(6); *see also* 27 C.F.R. § 478.124(c)(1).  In brief, "the line of causation between the illegal conduct and injury" plaintiff has alleged here is "too speculative."  *All. for Hippocratic Med.*, 602 U.S. at 383.

Plaintiff suggests that defendants' causation arguments in this case are inconsistent with the position taken by the Illinois Attorney General in a brief on behalf of the State of Illinois as *amicus curiae* in support of a New York statute, N.Y. Gen. Bus. Law §§ 898-a–e, which, like FIRA, permits public officials and private citizens to sue gun dealers who fail to establish and utilize reasonable business practices.  *See* AT Br. 27-29 (citing Amicus Brief of State of Illinois et al., *Nat'l Shooting Sports Found. v. James,* No. 22-1374 (2d Cir. 2023)).  For example, plaintiff points to the amicus brief's statements that "gun dealers contribute to the harm caused by firearms entering the illegal market when they engage in unlawful or irresponsible business practices, such as by selling firearms to known straw purchasers . . . or to individuals who do not provide appropriate documentation," and that holding gun dealers accountable for such practices can lead to "a significant decrease in the flow of firearms into the illegal market."  *Id.* at 27-28 (quoting Amicus Br. of Illinois et al., *supra*, at 8-10).  But the Attorney General's support for FIRA and similar legislation in other States has no bearing on whether the additional

regulation that plaintiff seeks here would cause any marginal reduction in the gun violence to which her child is exposed. In other words, the most that plaintiff could possibly show by citing the Attorney General's brief is that measures *already enacted* by Illinois are likely to reduce gun violence. That does not satisfy plaintiff's burden.

Likewise, plaintiff's argument that the Attorney General has acknowledged "empirical evidence" for the "proposition that preventing straw gun purchases will reduce the flow of guns into Chicago neighborhoods" falls far short. *Id.* at 27 (cleaned up). All parties here agree that straw purchasing is dangerous; indeed, that is why, as discussed, it is illegal under Illinois law. *See supra* pp. 25-28. But that says nothing about whether plaintiff's proposed regulation (or lack thereof) is likely to have a measurable effect on that problem.

When considered in context of the existing regulatory and criminal framework, plaintiff's complaint did not plausibly allege that the "gun violence to which [Plaintiff's child is] exposed daily," Doc. 178 at 1, "likely was caused or likely will be caused by" the State Police's failure to promulgate and enforce the regulation she seeks, *All. for Hippocratic Medicine*, 602 U.S. at 382.

## B. Plaintiff's injury is not likely to be redressed by her proposed regulation.

Plaintiff also lacks standing because she has not plausibly alleged that her alleged injury "likely would be redressed by the requested judicial relief." *All. for Hippocratic Med.*, 602 U.S. at 380. For all of the reasons discussed above with respect to traceability, *see supra* pp. 22-28, plaintiff has not shown that her proposed regulation is likely to reduce gun violence in her neighborhood in a way that satisfies

the Article III standing. *See All. for Hippocratic Med.*, 603 U.S. at 380 ("causation and redressability . . . are often flip sides of the same coin" (cleaned up)). But, even setting aside these causation-related flaws, redressability "pose[s] an independent bar" to plaintiff's ability to establish standing. *Id.* at 381 n.1. First, as the district court correctly concluded, the State Police is not authorized to promulgate the regulation she seeks. Second, because plaintiff's requested relief impermissibly seeks to control the State Police's discretionary enforcement priorities, this dispute is not "traditionally redressable in federal court." *Texas*, 599 U.S. at 676.

### 1. The State Police lacks authority to promulgate the rule that plaintiff seeks.

As the district court correctly concluded, plaintiff's injury could not be redressed by a favorable judicial decision because the State Police lacks the authority to promulgate the regulation that plaintiff seeks. Specifically, plaintiff seeks an injunction ordering the State Police to promulgate a rule requiring dealers to "'produce electronic records showing that the dealers use the Brady checklist or a similar checklist'" designed to identify potential straw purchasers, and to impose disciplinary sanctions on dealers who do not. Doc. 212 at 1-2 (quoting Doc. 209 at 3-4). But the Dealer Certification Act does not include this condition among the 11 enumerated offenses for which the State Police may discipline a dealer. Nor does any statute authorize the State Police to impose such a condition via rulemaking. Any such regulation thus would be void under Illinois law. *See, e.g.*, *Daniels v. Indus. Comm'n*, 201 Ill. 2d. 160, 165 (2002) (actions taken by agency in excess of "its specific statutory authority" are "void, a nullity from their inception"). Accordingly, plaintiff

cannot plausibly allege that her requested relief would provide "legally enforceable protection from the allegedly imminent harm" as necessary to establish Article III standing. *Brackeen*, 599 U.S. at 293.

Here, the Dealer Certification Act instructs that, if a dealer submits a valid federal firearms license and application for certification, the State Police "shall" issue a certificate of license. 430 ILCS 68/5-10; *see also id.* § 5-15(h)(i); *id.* § 5-40(a). This language is mandatory, except that the State Police "may" discipline gun dealers (including by revoking or declining to renew their certification) for 11 offenses that are specifically enumerated in section 5-85 of the Act. *See* 430 ILCS 68/5-85. As the district court correctly concluded, under the "familiar maxim of statutory construction[,] *expressio unius est exclusio alterius*, meaning roughly that an enumeration of criteria in a statute is interpreted to exclude items not on the list," it is clear that section 5-85's "list of eleven disciplinary criteria is exclusive." Doc. 212 at 4. And these 11 criteria do not include plaintiff's proposed requirement that dealers "'keep and produce electronic records showing that the dealers use the Brady checklist or a similar checklist authorized by the [State Police]'" designed to detect straw purchasers. *See id.* at 1-2 (quoting Doc. 209 at 3-4).

Nor does the Dealer Certification Act authorize the State Police to promulgate rules that would add to those 11 offenses, as "regulations can neither expand nor limit the statute they enforce." *Kean*, 235 Ill. 2d at 372. As the district court explained, *see* Doc. 212 at 4-6, it is well established under Illinois law that an agency "is a creature of statute and has no general or common law powers," *Schalz v.*

*McHenry Cnty. Sheriff's Dep't Merit Comm'n*, 113 Ill. 2d 198, 202 (1986); *accord Julie Q. v. Dep't of Child. & Fam. Servs.*, 2013 IL 113783, ¶ 24 ("agency is limited to those powers granted to it by the legislature"). Thus, "[a]n agency may adopt a rule and regulate an activity only insomuch as a statute empowers the agency to do so." *Ill. Bell Tel. Co. v. Ill. Com. Comm'n*, 362 Ill. App. 3d 652, 656 (4th Dist. 2005). Here, the Act grants the State Police rulemaking power only with respect to four specific provisions of the Act. *See* 430 ILCS 68/5-10; *id.* § 5-30; *id.* § 5-55; *id.* § 5-60; *see also supra* pp. 7-8. As the district court noted, "[a] similar grant of rulemaking authority is conspicuously absent under § 5-85," which enumerates the 11 grounds upon which the State Police may discipline a firearms dealer. Doc. 212 at 5. Thus, the Act does not authorize the State Police to engage in rulemaking regarding these criteria. *See People v. Clark*, 2019 IL 122891, ¶ 23 ("It is well settled that when the legislature uses certain language in one instance of a statute and different language in another part, we assume different meanings were intended." (cleaned up)). And it certainly does not authorize the State Police to promulgate rules that would "expand . . . the statute they enforce." *Kean*, 235 Ill. at 372; *see also Ill. Dep't of Revenue v. Ill. Civ. Serv. Comm'n*, 357 Ill. App. 3d 352, 364 (1st Dist. 2005) ("If an agency promulgates rules that are beyond the scope of the legislative grant of authority or that conflict with the statute, the rules are invalid."). In brief, "the list of eleven disciplinary criteria is exclusive, and a twelfth criterion may not be added by . . . an administrative agency like the [State Police]." Doc. 212 at 4.

Furthermore, as the district court noted, plaintiff's requested relief suffers from "an additional textual flaw" in that plaintiff seeks not only to require the State Police "to promulgate regulations adding a twelfth criterion to the . . . list" in excess of its statutory authority, but also to make the State Police's enforcement of that criterion "mandatory ('must') instead of discretionary ('may')." *Id.* at 4. Plaintiff specifically requested an injunction ordering the State Police to "exercise its authority" under section 5-85 of the Act "to require" dealers to "produce . . . records showing that the dealers use the Brady checklist" and to inform dealers that "failure to provide such records at the time of relicensing for inspection by [State Police] *will* subject the dealers to the disciplinary sanctions set out under 430 ILCS [68/5-85], including the denial of the relicensing of such dealer." Doc. 212 (quoting Doc. 209 at 3-4) (emphasis added). But an order *requiring* the State Police to sanction dealers for violations of plaintiff's proposed checklist regulation is inconsistent with the plain text of section 5-85, which states that the State Police "*may* refuse to renew or restore, or may reprimand, place on probation, suspend, revoke, or take other disciplinary or non-disciplinary action against" dealers for violation of the 11 enumerated criteria. 430 ILCS 68/5-85(a) (emphasis added).

In sum, plaintiff's requested relief seeks to "effectively amend the Dealer Certification Act" by adding a new criterion to the Act's list of 11 exclusive criteria for disciplinary sanctions under section 5-85 and by replacing the State Police's discretionary authority with a mandatory obligation. Doc. 212 at 6-7. But basic principles of statutory interpretation and long-standing Illinois law make clear that

the State Police lack the authority to amend the statute by regulation in this manner. *See Daniels*, 201 Ill. 2d. at 165 (actions taken by agency in excess of "its specific statutory authority" are "void, a nullity from their inception").

Plaintiff advances a number of arguments to escape this straightforward conclusion, but none has merit. To begin, plaintiff argues that her proposed checklist regulation would not be "a new criterion" under section 5-85. AT Br. 15. Instead, plaintiff suggests that failing to use, and produce records of, a checklist would be a *per se* violation of two of the existing statutory grounds for discipline under section 5-85: (1) "Violations of . . . any law applicable to the sale or transfer of firearms," and (2) "A pattern or practice or other behavior which demonstrates incapacity or incompetency to practice under this Act." AT Br. 20-21. Specifically, plaintiff argues that FIRA is a "law applicable to the sale of firearms," and that a dealer's failure to use her proposed checklist would be a violation of FIRA. *Id.* at 21.

This argument has multiple flaws. Plaintiff's argument establishes, at most, that section 5-85 authorizes the State Police, in its discretion, to discipline a dealer who is found to have committed a "violation" of FIRA (or, similarly, an unlawful "practice" under FIRA). *See* 430 ILCS 68/5-65(a)(1)-(2). But plaintiff provides no support for her assumption that a dealer's failure to use and maintain records of plaintiff's proposed checklist is a *per se* violation of FIRA under all circumstances. As explained above, *supra* pp. 8-9, FIRA provides that it is an "unlawful practice" for a dealer to "knowingly create, maintain, or contribute to a condition in Illinois that endangers the safety or health of the public . . . including failing to establish or

34

utilize reasonable controls," such as "business practices designed to . . . prevent the sale or distribution of a firearm-related product to a straw purchaser." 815 ILCS 505/2DDDD(b)(1)(A). Plaintiff's proposed regulation, in contrast, centers on whether a dealer filled out and produced a checklist to the State Police, not whether the dealer's actual practices at the time of sale were lawful or unlawful under FIRA. Similarly, the Dealer Certification Act's disciplinary provisions require individualized determinations of whether a dealer's specific practices violated the Act. *See* 430 ILCS 68/5-95(b)-(c), 5-100(a) (providing that State Police's "finding of whether the accused person violated . . . or failed to comply with the conditions required in" section 5-85 shall be made after individualized adjudicative proceedings). Thus, the Act authorizes the State Police to make individualized findings about whether a dealer's specific practices violated one or more of the 11 criteria enumerated in section 5-85; it does *not* authorize the State Police to impose additional substantive conditions on dealers via regulation.[6] In short, as the district court correctly concluded, "FIRA added to the list of unlawful practices that may give rise to civil liability to a private plaintiff who experiences 'actual damages,' but FIRA d[id] not modify the criteria the ISP should apply when deciding whether to renew a dealer's license." Doc. 212 at 6 (quoting 815 ILCS 505/10A(a)).

---

[6] Plaintiff repeatedly suggests that the State Police has argued that it lacks authority "to deny renewal of the licenses of . . . dealers who fail or refuse to follow responsible business practices" or "who fail or refuse to follow . . . responsible business practices required by [FIRA]." *See, e.g.*, 7th Cir. Doc. 15 at 2. That has never been defendants' position. To the contrary, defendants have consistently affirmed throughout this litigation that the State Police holds the authority to do so at its discretion. *See, e.g.*, Doc. 195 at 4; Doc. 210 at 6-7.

Plaintiff also renews her argument that section 5-30 of the Dealer Certification Act authorizes the State Police to promulgate her proposed rule. *See* AT Br. 19. That provision states that the State Police "may adopt rules related to continuing education for certified licensees related to legal requirements and responsible business practices regarding the sale or transfer of firearms." 430 ILCS 68/5-30. As the district court correctly concluded, section 5-30 plainly authorizes the State Police to adopt rules "as to 'continuing education' only." Doc. 212 at 5. It does not create "a backdoor way of expanding the ISP's regulatory authority over recordkeeping and the statutory criteria for disciplining firearm dealers." *Id.*; *see Ill. Bell Tel. Co. v. Ill. Com. Comm'n*, 203 Ill. App. 3d 424, 438 (2d Dist. 1990) (statutory provision authorizing agency to conduct "*study* of incentive-based regulation" necessarily meant that agency lacked authority to "implement directly such techniques" (emphasis in original)).

Next, plaintiff argues that "[t]he General Assembly did not have to grant specific rule-making authority [in the Dealer Certification Act] because ISP has such authority generally." AT Br. 18. In plaintiff's view, the State Police's enabling statute, the Illinois State Police Law, vests it with the authority to promulgate her proposed rule because it generally authorizes the State Police "[t]o promulgate rules and regulations necessary for the administration and enforcement of its powers and duties, wherever granted and imposed, pursuant to the Illinois Administrative Procedure Act." 20 ILCS 2605/2605-15. But an agency's general authority "to adopt rules, regulations, and procedures for accomplishing its statutory functions" is not

the same as "authority to enact substantive regulations" that legally bind third parties. *See Schalz*, 113 Ill. 2d at 203. The Police Law's general grant of rulemaking ability to the State Police simply does not grant it the authority to promulgate "substantive and mandatory regulations" on dealers requiring them to use, and maintain records of, plaintiff's proposed checklist. *Id.* at 733; *see also* Doc. 212 at 4 (holding that the State Police's "general rulemaking authority in its organic statute . . . may not be used, as [plaintiff] suggests, to engraft a license non-renewal rule onto the Dealer Certification Act"). And such general rulemaking authority certainly cannot be used by an agency to expand the scope of its limited authority under another statute. *See Kean*, 235 Ill. 2d at 372 ("regulations can neither expand nor limit the statute they enforce").

The Illinois Supreme Court's decision in *Schalz* is illustrative. There, the McHenry County Sheriff's Department Merit Commission promulgated a rule requiring deputy sheriffs to seek approval from both the County Sheriff and the Commission before engaging in off-duty employment as security guards. *Schalz*, 113 Ill. 2d at 200-01. The plaintiff deputy sheriffs argued that the Commission lacked authority to promulgate the regulation. *Id.* at 732. The court agreed, despite the fact that the Merit Commission's enabling statute authorized the Commission to "formulate, adopt and put into effect, rules, regulations and procedures for its operation and the transaction of its business" in accordance with "recognized merit principles of public employment." *Id.* at 203. The court held that this enabling statute "merely allow[ed] the commission to adopt rules, regulations and procedures

for accomplishing its statutory functions" and did not "expressly authorize[ ] the commission to promulgate substantive rules of conduct for members of the sheriff's department." *Id.* In reaching this conclusion, the court rejected the Commission's argument that, because it was expressly authorized by statute to "disciplin[e] or discharg[e] employees upon complaint of the sheriff," it had incidental authority to promulgate the challenged rule in order to "put deputy sheriffs on notice of that conduct which would subject them to the commission's exercise of its disciplinary authority." *Id.* at 204. The Illinois Supreme Court explained that "[t]he commission may not . . . enact substantive and mandatory regulations which restrict the outside activities of deputies under the guise of notifying deputies of 'improper' conduct." *Id.*

Subsequent Illinois decisions have likewise held that general grants of rulemaking authority in an agency's enabling statute do not permit the agency to impose substantive obligations on third parties that are not otherwise authorized by statute. *See, e.g.*, *Levin v. Ret. Bd. of Cnty. Emps. & Offs. Annuity & Benefit Fund*, 2019 IL App (1st) 181167, ¶ 23 (Board of State Pension Fund had no statutory authority promulgate substantive eligibility rules for certain Fund benefits, notwithstanding a statute granting it authority "to make rules and regulations necessary for the administration of the fund" (cleaned up)); *Julie Q.*, 2013 IL 113783, ¶¶ 5, 25 (Department of Children and Family Services exceeded its statutory authority in promulgating definition of neglect to include "plac[ing] a child in an environment that is injurious to the child's health and welfare," notwithstanding

Department's "authority to make all rules necessary to execute its powers under the Children and Family Services Act").

The two cases on which plaintiff relies are consistent with this straightforward rule. *See* AT Br. 23-24 (citing *People v. Henry*, 398 Ill. App. 3d 1019 (3d Dist. 2010), and *Eastman Kodak Co. v. Fair Emp. Practices Comm'n*, 86 Ill. 2d 60 (1981)). In *Henry*, the court considered whether the State Police, which implements the Illinois Vehicle Code, could issue a regulation regarding the collection of urine samples from drivers involved in serious accidents. 398 Ill. App. 3d at 1021. The court held that a specific provision of the Vehicle Code, requiring drivers involved in serious accidents to submit a blood, breath, or urine test, to be administered at the arresting officer's direction, did *not* supply the requisite statutory authority for the State Police to issue the regulation. That is because that provision did "not authorize the Department to create regulations regarding the collection and analysis of blood, breath, or urine," and therefore did "not apply" to the case. *Id.* at 1022. In contrast, the court found that a *different* section of the Vehicle Code supplied the requisite authority because it "specifically authorize[d]" the State Police to regulate on the issue at hand, stating "[t]he Department of State Police shall prescribe regulations as necessary to implement this Section." *Id.*

Similarly, in *Kodak*, the court considered the validity of an agency's regulation requiring a contractor to submit an acceptable affirmative action plan. 86 Ill. 2d at 64. The relevant statute required, "as a precondition to contract," that a contractor "agree to take affirmative action." *Id.* at 64-65. But the parties did not dispute that

the agency was expressly authorized by that same statute to "issue rules and regulations . . . for the purposes of enforcement and administration" of the precondition requirement. *Id.* at 65. Rather, the parties disputed the *scope* of the statutory term "affirmative action," which necessarily affected whether the agency was authorized to promulgate the challenged regulation. *See id.* at 70-72 (parties disputed whether "affirmative action," as used in statute, referred to measures to prevent "individual acts of discrimination in employment," or "refer[red] to programs with goals and timetables and other means designed to secure and guarantee equal employment opportunities to members of minority groups").

In contrast to the relevant statutes in *Henry* and *Kodak*, as discussed above, the Dealer Certification Act does not contain any provision authorizing the State Police to promulgate rules regarding grounds for discipline under the Act. And, just as the Illinois Supreme Court held in *Schalz*, the State Police's enabling statute does not grant it free-ranging authority "to promulgate substantive rules of conduct" for dealers. *Id.* at 203.

On appeal, plaintiff makes much of the district court's statement that plaintiff sought an order requiring "mandatory non-renewal" of a dealer's license, AT Br. 10. Plaintiff argues that she is not seeking "mandatory non-renewal," but instead an order requiring the State Police to use its discretionary authority to impose disciplinary sanctions short of non-renewal. *See, e.g.*, *id.* at 12-13; *id.* at 15 (arguing that the State Police "has multiple options in its discretion in dealing with relicensing" and thus "may not refuse to renew a license and still, in its discretion,

take some other authorized action with a gun dealer"). But to the extent that is plaintiff's position, it runs headlong into Supreme Court precedent, discussed below, *infra* pp. 43-46, that federal courts lack jurisdiction to adjudicate claims that the government is insufficiently enforcing its laws.

Moreover, plaintiff cannot genuinely dispute that she seeks "mandatory" rather than discretionary use of the State Police's disciplinary authority. Plaintiff sought an injunction ordering that the State Police "'*shall* notify dealers . . . that failure to provide such records at the time of relicensing . . . *will* subject the dealers to the disciplinary sanctions set out under 430 ILCS [68/5-85], including the denial of relicensing.'" Doc. 212 at 2 (quoting Doc. 209 at 3-4) (emphasis added); *see also* Doc. 178 at 1 ("this lawsuit seeks to require the [State Police] . . . to condition renewal of licenses of Illinois firearm dealers on their documented compliance with responsible business practices to prevent sales to persons when there are indications of straw purchasing"). Even plaintiff's opening brief on appeal, while insisting she is not arguing for "mandatory" discipline, simultaneously argues that "ISP must use [its] authority" because she has shown that her checklist rule "will significantly reduce the level of gun violence." AT Br. 14; *see also id.* at 20 ("Given that such authority to deny a license exists . . . the [State Police] has to use that authority as a reasonable accommodation.").

Finally, plaintiff asserts that, by rejecting her arguments, "[t]he District Court held that [the State Police] can issue no rules . . . except specifically rules under 430 ILCS 68/5-30." *Id.* at 17. Plaintiff further argues that this purported "holding"

would "invalidate by implication all current existing regulations or interpretive rules that the ISP has issued . . . for the enforcement of the [Dealer Certification Act]." *Id.* at 17-18. This is an obvious misreading of the district court's opinion. The court analyzed whether the State Police had rulemaking authority to promulgate the regulation at issue under the three statutory provisions that plaintiff invoked: 430 ILCS 68/5-65, 430 ILCS 68/5-30, and 20 ILCS 2605/2605-15. *See* Doc. 212 at 2 (citing Doc. 209 at 3-4). Neither the parties nor the court addressed the scope of the State Police's rulemaking power under other statutory provisions or the validity of other regulations under the Dealer Certification Act. Indeed, other provisions of the Act not at issue here unquestionably grant certain rulemaking authority to State Police. *See, e.g.*, 430 ILCS 68/5-55 (authorizing rules regarding the adequacy of a safe storage plan).

In sum, because the State Police lacks the authority to promulgate plaintiff's proposed rule, she cannot show that her requested relief would provide "legally enforceable protection from the allegedly imminent harm" as necessary to establish Article III standing. *See Brackeen*, 599 U.S. at 293.

## 2. Plaintiff's requested relief improperly seeks to control defendants' discretionary enforcement decisions.

Even if the State Police had the authority to implement the proposed regulation (it does not), plaintiff would still lack Article III standing because the injunctive relief she seeks is, at bottom, an improper request to reorder the State Police's enforcement priorities. And the Supreme Court has held that a dispute over an agency's underenforcement of laws is not "of the kind 'traditionally redressable in

42

federal court.'" *All. for Hippocratic Med.*, 602 U.S. at 381 n.1 (quoting *Texas*, 599 U.S. at 676).[7]

In *United States v. Texas*, for example, the plaintiffs challenged the Department of Homeland Security's policy guidelines prioritizing the arrest and removal of certain noncitizens, such as those who are dangerous criminals. 599 U.S. at 673-74. The plaintiffs argued that two federal statutes expressly required, with mandatory "shall" language, the Department "to arrest *more* criminal noncitizens pending their removal." *Id.* at 674 (emphasis in original). By failing to enforce those laws by arresting individuals who did not fall into the Department's prioritized categories, the plaintiffs argued, the Department harmed the plaintiffs by causing them to incur additional costs. Although the Supreme Court recognized that "[m]onetary costs are of course an injury," it held that the plaintiffs nonetheless lacked standing because their underenforcement theory of injury was not one that was "traditionally thought to be capable of resolution through the judicial process." *Id.* at 676.

That was so, the Court explained, because the executive branch, and not the judiciary, "possesses the authority to decide 'how to prioritize and how aggressively to pursue legal actions against defendants who violate the law.'" *Id.* at 678 (quoting *TransUnion*, 594 U.S. at 429). In addition to separation-of-powers concerns, the Court explained that it has long recognized "the 'general unsuitability for judicial

---

[7] This conclusion is the same regardless of whether this court is inclined to view the issue with plaintiff's underenforcement theory of standing as a failure to allege a cognizable injury-in-fact or as a failure to allege redressability.

review of agency decisions to refuse enforcement'" because "inevitable resource constraints and regularly changing public-safety and public-welfare needs" require decisionmakers to "balance many factors" when deciding on policies. *Id.* at 680 (quoting *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)). This "complicated balancing practice in turn leaves courts without meaningful standards for assessing those policies." *Id.*

These doctrinal and functional concerns equally apply to the theory of injury and requested relief at issue here. Plaintiff has alleged a quintessential underenforcement[ injury: harm from the State Police's "superficial[ ]" enforcement of the Dealer Certification Act. AT Br. 13. Although plaintiff has attempted to frame this dispute in various ways to avoid this problem, what she ultimately seeks is for a federal court to order the State Police to do more to enforce laws against straw purchasing by promulgating a regulation that would require the State Police to act in accordance with her enforcement priorities. *See, e.g.*, *id.* at 9 ("The lawsuit seeks to require the State Police to enforce State law . . . "); *id.* at 14 (arguing that State Police "must use [its] authority" and "exercise its discretionary authority in a certain manner"); *id.* at 20 (State Police "has to use" its authority). That form of relief finds no support in "precedent, history, or tradition" and thus cannot support standing. *Texas*, 599 U.S. at 677.

As discussed above, plaintiff now argues that the district court misunderstood her to be seeking "mandatory non-renewal" of a dealer's license. AT Br. 10. Instead, plaintiff argues, the State Police must exercise its "discretion" to "take some other

authorized action" under section 5-85, such as a reprimand, suspension, or fine. *Id.* at 15. But this does nothing to resolve the fundamental redressability issue here, which is that plaintiff seeks to compel the State Police to reorder its discretionary enforcement priorities to more "aggressively [ ] pursue legal actions against defendants who violate the law." *Texas*, 599 U.S. at 678 (cleaned up); *see also Dep't of Educ. v. Brown*, 600 U.S. 552, 564 (2023) (Supreme Court has "[n]ever accepted that an injury is redressable when the prospect of redress turns on the Government's wholly discretionary decision to create a new regulatory or benefits program."). As discussed, *see supra* p. 33, the Dealer Certification Act specifically provides the State Police with the discretion, not the obligation, to take disciplinary action against dealers for the 11 offenses listed in section 5-85. Plaintiff's requested relief, in contrast, would replace that discretion with an obligation to enforce plaintiff's checklist rule, necessarily diverting resources from other enforcement priorities. Such decisions about how best to dedicate limited time and resources are traditionally the province of the political branches. *See All. for Hippocratic Med.*, 602 U.S. at 380 (Article III's limits "leave[ ] many crucial decisions to the political processes, where democratic debate can occur and a wide variety of interests and views can be weighed" (cleaned up)).

Finally, the nature of plaintiff's requested relief is particularly problematic because it implicates not only separation of powers concerns, but also "principles of equity, comity and federalism that should inform the judgment of federal courts when asked to oversee state law enforcement authorities." *City of Los Angeles v.*

*Lyons*, 461 U.S. 95, 112 (1983). The Supreme Court has long recognized that "the need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers engaged in" law enforcement activities. *Id.* These principles clearly counsel restraint here, where there would be no principled way to cabin plaintiff's underenforcement theory of standing. *See Texas*, 599 U.S. at 681 ("The States' novel standing argument, if accepted, would entail expansive judicial direction of the Department's arrest policies."); *see also Shakman v. Pritzker*, 43 F.4th 723, 732 (7th Cir. 2022) ("Article III does not confer on federal judges some amorphous power to supervise the operations of government and reimagine from the ground up" a State's practices.).

***

In brief, this court should affirm the district court's dismissal for lack of jurisdiction because plaintiff lacks Article III standing. The high level of gun violence that plaintiff and her child experience is a serious problem that the State already takes many actions to address, including but certainly not limited to enacting the Dealer Certification Act and FIRA. Plaintiff did not plausibly allege that the State Police's allegedly unlawful withholding of the additional regulatory action that she seeks is the likely cause of the gun violence to which her child is personally exposed. Nor did plaintiff plausibly allege that the promulgation of her proposed regulation would likely redress that harm. Indeed, plaintiff could not do so, because the proposed regulation exceeds the State Police's statutory authority and therefore would be void under Illinois law, as the district court correctly recognized. Lastly,

plaintiff's dissatisfaction with the State Police's exercise of its discretionary disciplinary authority under the Dealer Certification Act is a clear example of a dispute over executive branch underenforcement that is not "traditionally redressable in federal court." *Texas*, 599 U.S. at 676.

## III. Plaintiff failed to state a claim under the Rehabilitation Act or the Illinois Civil Rights Act.

In the alternative, dismissal was warranted because plaintiff failed to state a claim under Fed. R. Civ. P. 12(b)(6). Plaintiff alleged that the State Police's failure to regulate amounted to a failure to provide a reasonable accommodation for a disability under section 504 of the Rehabilitation Act and also caused a racially "discriminatory effect" under the ICRA. Both claims are insufficient for similar reasons: plaintiff failed to plausibly allege a causal relationship between a specific practice of the State Police and disproportionate harm to children based on their race or disability.

### A. Plaintiff failed to state a claim under section 504 of the Rehabilitation Act

Plaintiff alleged that, by failing to require dealers to use her proposed checklist, the State Police has "denied [plaintiff] and the proposed class a reasonable accommodation to the mental health needs of these children" in violation of section 504 of the Rehabilitation Act. Doc. 178 at 27; *see also* AT Br. 16 ("By abandoning and failing to use its regulatory power, the ISP has unlawfully refused a reasonable accommodation to D.W. and the class in violation of [s]ection 504 of the

Rehabilitation Act, 29 U.S.C. § 794.").[8]  But plaintiff does not seek a "reasonable

accommodation" to any existing program that the State Police offers that her child

cannot access because of his disability.  Rather, she seeks to compel the State Police

to take additional measures that she believes would benefit her child and other

children with disabilities.  That claim is flawed for many reasons.

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified

individual with a disability . . . shall, solely by reason of her or his disability, be

excluded from the participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving Federal financial assistance."

29 U.S.C. § 794(a).  This court has explained that "the Rehabilitation Act requires

public entities to modify federally assisted programs if such a modification is

_____

[8]  In response to defendants' motion to dismiss the fourth amended complaint,
plaintiff also appeared to advance a disparate-impact theory under section 504.  Doc.
192 at 4.  Defendants argued that plaintiff had forfeited that argument and, in any
case, failed to state a claim for disparate impact because no allegations referencing or
supporting such a claim appeared in her complaint.  *See* Doc. 195 at 11-12.  On
appeal, plaintiff's opening brief asserts only a reasonable-accommodation claim under
section 504.  *See, e.g.*, AT Br. 10 (describing alleged violation of section 504 as an
"unlawful denial of a reasonable accommodation").  By "omit[ing] from [her] opening
brief any discussion about" a disparate-impact claim under section 504, plaintiff has
"abandoned th[at] claim[ ] on appeal."  *Dinerstein*, 73 F.4th at 512.  Regardless, a
disparate-impact claim would fail for the same reasons articulated here, *see infra* pp.
49-54, because plausible allegations regarding a pre-existing "program or activity"
and but-for causation are essential elements of a section 504 claim "regardless of a
plaintiff's theory of liability."  *H.P. by W.P. v. Naperville Cmty. Unit Sch. Dist. #203*,
910 F.3d 957, 960 (7th Cir. 2018).  Furthermore, a disparate-impact claim would fail
for the additional reason that plaintiff has not plausibly alleged that individuals with
disabilities are more likely to be exposed to gun violence as a result of the State
Police's failure to regulate than other individuals.  *See Roberts v. City of Chicago*, 817
F.3d 561, 566 (7th Cir. 2016) (plaintiff must plead some "factual content . . . tending
to show that [challenged action] caused a relevant and statistically significant
disparity between disabled and non-disabled [individuals]" (cleaned up)).

necessary to ensure that the disabled have equal access to the benefits of that program." *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 748 (7th Cir. 2006) (*en banc*). But this court also follows the "corollary" limiting principle that an individual may be entitled to a reasonable accommodation "only when they would have difficulty obtaining those benefits 'by reason of' their disabilities, and not because of some quality that they share generally with the public." *Id.* In other words, "'[t]here must be a causal connection between the disability and [the plaintiff's] ineligibility'" for a covered program or activity. *Id.* (quoting *Washington v. Ind. High Sch. Athletic Ass'n*, 181 F.3d 840, 848 (1999)).

### 1. Plaintiff did not identify any existing "program or activity" that her child is entitled to participate in or receive benefits from.

Here, plaintiff's claim fails at the threshold because she did not plausibly allege the existence of any "program or activity" that her child is "excluded from participation in," "denied the benefits of," or "subjected to discrimination under." 29 U.S.C. § 794(a). Her complaint vaguely referred to the State Police's "federally assisted law enforcement programs and activities, including firearm dealer training and oversight." Doc. 178 at 26. Before the district court, plaintiff asserted that the relevant "program" was "the regulation of dealers under the [Dealer Certification Act]." *See* Doc. 192 at 9. But the only function of that Act is to establish a certificate of license requirement for a "person or entity" seeking to "engage in the business of selling, leasing, or otherwise transferring firearms" in Illinois. *See* 430 ILCS 68/5-15(a). And it is undisputed that neither plaintiff nor the minor child she represents

are seeking to do business under the Act. The Dealer Certification Act's regulation of third parties is not a program or activity that plaintiff seeks to participate in or otherwise gain "meaningful access" to. *See Alexander v. Choate*, 469 U.S. 287, 301-02 (1985) (section 504 seeks to ensure that "an otherwise qualified [disabled] individual . . . be provided with meaningful access to the benefit that the grantee offers" to the non-disabled). Because the State Police did not "den[y] [plaintiff] access to any services or programs . . . available to non-disabled [individuals]," she cannot state claim that the State Police's purported failure to regulate violated section 504, no matter "how inappropriate those failings might otherwise have been." *Waggoner v Lemmon*, 778 F.3d 586, 593 (7th Cir. 2015).

Before the district court, plaintiff argued that, although she does not "participate" in the regulation of dealers, she nonetheless stated a claim under section 504 because her child has been denied a "benefit" of that regulatory "program" on the basis of his disability. *See* Doc. 192 at 9. But, again, apart from a certificate of license to do business, which the State Police "shall" issue to a dealer who complies with the statutory requirements of the Act, 430 ILCS 68/5-10, the Act does not entitle *any* individual to *any* benefit.

Plaintiff cannot avoid this straightforward conclusion by redefining the relevant "benefit" of the Dealer Certification Act broadly as a reduction in gun violence. *See, e.g.*, Doc. 192 at 9. At that level of abstraction, plaintiff (and indeed, any member of the public) would be entitled to challenge any number of laws and regulations that a State enacts for the big-picture purpose of promoting general

public safety and welfare. That is inconsistent with the plain text of section 504, which limits its cause of action to those individuals with disabilities who are "otherwise qualified" for a "program or activity." 29 U.S.C. § 794(a); *cf.* 42 U.S.C. § 12131(2) (defining "qualified individual with a disability" as someone who . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities"). And it is likewise inconsistent with Supreme Court precedent rejecting a similar attempt to frame the "benefit" of a federally funded program in unworkably broad terms. *See Choate*, 469 U.S at 303 (rejecting plaintiffs' section 504 challenge to Tennessee's Medicaid program in part based on Court's conclusion that the "benefit provided through state Medicaid programs" was "a particular package of health care services," and *not* "the amorphous objective of 'adequate health care'").

> **2.** **Plaintiff did not plausibly allege that the State Police discriminated against her child "solely because of" his disability.**

Even if plaintiff were entitled to some cognizable "benefit" from the State Police's regulation of dealers, she nonetheless failed to state a section 504 claim because she did not plausibly allege that she was denied any such benefit "solely because of" a disability (in this case, her child's post-traumatic stress disorder). "[T]he Rehabilitation Act helps disabled individuals obtain access to benefits only when they would have difficulty obtaining those benefits 'by reason of' their disabilities, and not because of some quality that they share generally with the public." *Wis. Cmty. Servs.*, 465 F.3d at 754. The "causation" element of a section

504 claim "is satisfied only when the plaintiff shows that, 'but for' his disability, he would have been able to access the services or benefits desired." *Id.*; *see also Conners v. Wilkie*, 984 F.3d 1255, 1261 (7th Cir. 2021) (section 504 has a "strict[ ] causation requirement"). Plaintiff did not, and cannot, plausibly allege that, but for her child's post-traumatic stress disorder, he would be entitled to access the "services or benefits desired" — *i.e.*, a reduction in gun violence. All children, regardless of disability, benefit from the State Police's existing efforts to regulate dealers under the Act. And to the extent that plaintiff's proposed regulation would result in any reduction in gun violence, *all* individuals lack access to the benefit of that regulatory scheme, regardless of disability. This court has repeatedly rejected the argument that a defendant is obligated to provide a reasonable accommodation to individuals with disabilities simply because a practice that "adversely affects [everyone's] ability" to access a program or benefit "also affects disabled [people's] access." *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 562 (7th Cir. 2003); *see also, e.g.*, *Waggoner*, 778 F.3d at 593 (claims about actions that "do not amount to a denial of services" that are "available to the non-disabled" are not cognizable under section 504); *Wis. Cmty. Servs.*, 465 F.3d at 748 ("There must be a causal connection between the disability and [the plaintiff's] ineligibility" for desired benefit. (cleaned up)).

Finally, plaintiff's claim also fails because her proposed accommodation is not reasonable. As discussed above, *supra* pp. 25-28, in the context of the extensive actions Illinois already undertakes to reduce gun violence, plaintiff has not plausibly

52

alleged that the regulation she seeks would have any appreciable marginal effect.

Moreover, because the State Police lack the power to adopt plaintiff's proposed

regulation, it is an unreasonable accommodation as a matter of law. *See A.H. by*

*Holzmueller v. Ill. High School Ass'n*, 881 F.3d 587, 594 (7th Cir. 2018)

("accommodation is unreasonable if it imposes significant financial or administrative

costs, or it fundamentally alters the nature of the program or service"). And

plaintiff's requested accommodation is also unreasonable because it would encroach

"on the States' longstanding discretion" to make policy decisions about how to

address gun violence. *Choate*, 469 U.S. at 307.

In brief, plaintiff's claim is simply "a poor fit for the statute[ ] she has

invoked." *Waggoner*, 778 F.3d at 593. It is not enough for plaintiff to allege that her

child has a disability and that the impact of his disability would be mitigated if the

State Police adopted her preferred regulatory measures. *See Choate*, 469 U.S. at 303-

04 (section 504 does not "require[ ] States to view certain [issues], *i.e.*, those

particularly affecting the [disabled], as more important than others and more worthy

of . . . government subsidization"); *Wis. Cmty. Servs.*, 465 F.3d at 754 (rejecting

argument that a measure is "necessary to avoid discrimination on the basis of

disability" simply because it "*helps* the disabled" (emphasis in original)).

### B.  Plaintiff failed to state a claim under the Illinois Civil Rights Act.

Because plaintiff failed to state a claim under section 504 of the Rehabilitation

Act, "the presumption is that the court will relinquish federal jurisdiction over any

supplemental state-law claims." *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d

476, 479 (7th Cir. 2012) (cleaned up).  This court thus need not reach the merits of plaintiff's ICRA claim.[9]

In any event, plaintiff failed to state a claim under the ICRA, 740 ILCS 23/5(a)(2), which provides that no state agency shall "utilize criteria or methods of administration that have the effect of subjecting individuals to discrimination because of their race, color, national origin, or gender."  740 ILCS 23/5(a)(2). Plaintiff alleged that the State Police's "refusal" to promulgate her proposed regulation had the "effect" of racial discrimination against her child because "Black children . . . live disproportionately in high crime neighborhoods."  Doc. 178 at 27. But, as with her Rehabilitation Act claim, plaintiff's allegations that Black children would benefit if the State Police were to do more to combat gun violence do not map on to the basic elements of an ICRA claim.

ICRA was enacted in response to the Supreme Court's decision in *Alexander v. Sandoval*, 532 U.S. 275 (2001), which held that private plaintiffs could not bring disparate-impact claims under Title VI of the Civil Rights Act of 1964.  *See Ill. Native Am. Bar Ass'n v. Univ. of Ill.,* 368 Ill. App. 3d 321, 327 (1st Dist. 2006).  Specifically, section 5(a)(2) of ICRA "reinstate[d] the ability of individuals" to pursue disparate-

---

[9]  Plaintiff asserts, without citation, that defendants have "consistently sought a ruling on the merits in federal court regarding the ICRA claim."  AT Br. 14-15.  This is incorrect.  In addition to arguing that all of plaintiff's claims (including her ICRA claim) should be dismissed for lack of standing, defendants also argued in the district court that, should the court dismiss plaintiff's Rehabilitation Act claim on the merits, the court should decline to exercise supplemental jurisdiction over plaintiff's ICRA claim.  *See* Doc. 185 at 27.  Plaintiff failed to respond to this argument in the district court.  *See* Doc. 192 at 14-15 (failing to respond to defendants' argument); Doc. 195 at 15 (noting the forfeiture).

impact claims "that had been available to them in federal courts" before *Sandoval*, but it did not "create new rights." *Id.* Because section 5(a)(2) of ICRA "was expressly intended to provide a state law remedy that was *identical* to the federal disparate impact canon," *Jackson v. Cerpa*, 696 F. Supp. 2d 962, 964 (N.D. Ill. 2010), courts apply "federal-law analogue[s]" to interpret it, *Cary v. Ne. Ill. Reg'l Commuter R.R. Corp.*, No. 19-cv-3014, 2020 WL 1330654, at *4 (N.D. Ill. Mar. 22, 2020).

To state a prima facie case for a disparate-impact claim, "it is not enough to simply allege that there is a disparate impact on [the plaintiff], or point to a generalized policy that leads to such an impact." *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005); *see also Cary*, 2020 WL 1330654, at *4 (applying this standard to ICRA disparate-impact claim). Likewise, a complaint that "alludes to disparate impact in wholly conclusory terms" is not sufficient. *Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014). Rather, "[t]o state a disparate impact claim under the ICRA, a plaintiff must 'identify a specific [ ] practice' and 'allege its causation of the disparate impact.'" *Wilkins v. City of Chicago*, 736 F. Supp. 3d 616, 624 (N.D. Ill. 2024) (quoting *McQueen v. City of Chicago*, 803 F. Supp. 2d 892, 907 (N.D. Ill. 2011)). Although a plaintiff asserting a disparate-impact claim may "rely on a variety of statistical methods and comparisons to support their claims," the plaintiff is still required to plead "some factual content in the complaint tending to show" that the challenged policy of the defendant "caused a relevant and statistically significant disparity between [racial groups]." *Adams*, 742 F.3d at 733. This causation requirement "safeguards [defendants] against liability 'for the myriad of innocent

causes that may lead to statistical imbalances.'" *O'Brien v. Caterpillar Inc.*, 900 F.3d 923, 928 (7th Cir. 2018) (quoting *Smith*, 544 U.S. at 241).

As an initial matter, as discussed above, the State Police lack the authority to promulgate plaintiff's proposed regulation. *See supra* Part II.B.1. Although ICRA ensures that state agencies do not use their existing powers to discriminate based on race, it does not grant agencies any additional authority. *See Ill. Native Am. Bar Ass'n,* 368 Ill. App. 3d at 327 (ICRA did not "create new rights"). That alone is sufficient grounds for concluding that plaintiff has failed to state a claim under ICRA. Plaintiff's claim also fails for the independent, additional reasons that (1) she has not identified any specific "criteria or methods of administration" as required under ICRA, and (2) she has not plausibly alleged that any such practice had a racially disparate effect.

### 1. Plaintiff did not identify any specific "criteria or methods of administration."

Section 5(a)(2) of ICRA requires a plaintiff to identify "criteria or methods of administration" that have the effect of racial discrimination. 740 ILCS 23/5(a)(2). Plaintiff does not point to any State Police policy or practice currently in force that has a racially disparate impact; instead, she argues that State Police should implement *additional* regulatory measures that would benefit Black children. Although plaintiff attempts to shoehorn this request into the statutory language by arguing that the State Police's "disavowal of existing authority" and/or "refusal" to promulgate plaintiff's preferred regulation constitutes a "method of administration," *see* AT Br. 20; Doc. 178 at 27, both Illinois and federal courts have rejected this kind

of boundless failure-to-act theory in the context of disparate-impact claims. *See, e.g.*, *Coalition for Safe Chi. Cmtys. v. Village of Riverdale*, No. 215 CH 10390, 2016 WL 1077293, at *13 (Ill. Cir. Ct. Feb. 25, 2016) (dismissing plaintiffs' claim that two villages violated ICRA by failing to adequately regulate and license firearms because plaintiffs "impermissibly rel[ied] upon Defendants' *lack of* identifiable policies, practices, criteria, or methods of administration" and thus had failed to allege a *prima facie* case of disparate-impact discrimination); *EEOC v. Chi. Miniature Lamp Works*, 947 F.2d 292, 305 (7th Cir. 1991) (rejecting argument that employer who "passively waited for applicants" had engaged in any particular "practice" that could give rise to a disparate-impact claim under Title VII, and instead stating that "a more affirmative act by the employer must be shown").

In short, the State Police's alleged failure to adopt some affirmative action to improve an unequal status quo is not the equivalent of a method of administration that has a discriminatory effect. *See Chi. Miniature Lamp Works*, 947 F.2d at 305 (Title VII plaintiff must allege "that a specific, affirmative employment practice caused the disparity").

### 2. Plaintiff did not plausibly allege that the State Police caused any racially disparate impact.

Even if the State Police's purported "refusal" to implement plaintiff's preferred regulation could be considered a "method[ ] of administration" under ICRA, plaintiff's claim would nonetheless fail because she has not shown that it "ha[s] the effect of subjecting individuals to discrimination because of their race." 740 ILCS 5/23(a)(2). To state a claim under ICRA, plaintiff must show that the State

Police's method of administration *causes* the disparate impact she has identified, *i.e.*, racial disparity in the levels of gun violence that children are exposed to. *See, e.g.*, *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Proj., Inc.*, 576 U.S. 519, 542 (2015) ("A robust causality requirement ensures that '[r]acial imbalance . . . does not, without more, establish a prima facie case of disparate impact' and thus protects defendants from being held liable for racial disparities they did not create."); *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657 (1989), *abrogated in non-relevant part by legislation* ("plaintiff must demonstrate that it is the application of a specific or particular [ ] practice that has created the disparate impact under attack"). By plaintiff's own admission, racial disparities in exposure to gun violence pre-date the enactment of the Dealer Certification Act. *See, e.g.*, Doc. 178 at 6-7 (citing statistics about racial disparities in gun homicides from 2015 and 2016). And plaintiff included no allegations to suggest that these racial disparities have worsened in any relevant respect, much less that the State Police's failure to regulate as plaintiff would prefer is a cause of such racial inequality. ICRA does not impose liability on the State Police "for racial disparities [it] did not create." *Inclusive Cmtys. Proj.*, 576 U.S. at 542.

In sum, plaintiff asserts that because gun violence disproportionately affects Black children, the State Police (and indeed, any state agency) violates section 5(a)(2) of ICRA any time it declines to use its purported authority to take action that might arguably reduce gun violence. That interpretation of ICRA has no basis in the text of the statute and is clearly beyond the scope of the federal laws on which it is based.

**IV.   This court should deny plaintiff's motion to certify two questions of state law that are not uncertain and that need not be resolved to affirm the district court's dismissal.**

Lastly, this court should deny plaintiff's motion to certify two questions of state law to the Illinois Supreme Court under 7th Cir. R. 52.  Specifically, plaintiff argues that this court should ask the Illinois Supreme Court to decide whether the State Police has the statutory authority (1) "to require Cook County dealers seeking annual renewal of their licenses . . . to produce digital or other records that show such dealers are following responsible business practices at the time of the sale of their firearms," and (2) "to deny renewal of the licenses of those Cook County dealers who fail or refuse to follow responsible business practices."  7th Cir. Doc. 15.

As defendants explained in their response in opposition to that motion, *see* 7th Cir. Doc. 20, and as defendants' arguments above further demonstrate, certification is not warranted.[10]  First, there is no "genuinely uncertain . . . issue of state law" at issue in this case requiring the assistance of the Illinois Supreme Court.  *Johnson v. Amazon.com Servs. LLC*, 142 F.4th 932, 943 (7th Cir. 2025).  Notwithstanding plaintiff's strained attempt to reframe the issue in her motion for certification, the only state-law question relevant to plaintiff's standing is whether the State Police has statutory authority to promulgate plaintiff's proposed regulation.  The district court

---

[10]  Although 7th Cir. R. 52(a) instructs that a party seeking certification should "include[ ]" that motion "in the moving party's brief," plaintiff filed a separate motion, 7th Cir. Doc. 15.  Accordingly, defendants filed a response in opposition to that motion explaining why certification was inappropriate. 7th Cir. Doc. 20.  This court ordered that the motion and response be distributed to the assigned merits panel.  7th Cir. Doc. 21.

correctly applied well-settled principles of statutory interpretation and of Illinois law to conclude that the State Police lacks that authority.  *See supra* Part II.B.1; 7th Cir. Doc. 20 at 7-9; *see also Johnson*, 142 F.4th at 943 (certification not appropriate "when what is required is not promulgation of new law but rather, the exercise of a court's judgment" (cleaned up)).

Second, certification is particularly unnecessary here, where there are numerous alternative grounds for affirmance.  *See* 7th Cir. R. 52(a) (certified question should "control the outcome of [the] case"); Ill. Sup. Ct. R. 20(a) (certified question should "be determinative").  Setting aside the issue of the State Police's regulatory authority, plaintiff nonetheless failed to plausibly allege that her injury is fairly traceable to defendants, failed to demonstrate that her injury is of the kind traditionally redressable by federal courts, and failed to state a claim on the merits. *See supra* Parts II.A, II.B.2, III; 7th Cir. Doc. 20 at 9-11.  In sum, this is not the unusual case in which certification is "particularly necessary."  *Jadair Int'l, Inc. v. Am. Nat'l Prop. & Cas. Co.*, 77 F.4th 546, 557 (7th Cir. 2023).

## CONCLUSION

For these reasons, this court should affirm the district court's dismissal of the case for lack of subject-matter jurisdiction, or, in the alternative, modify the court's judgment to be a dismissal with prejudice for failure to state a claim upon which relief can be granted.

Respectfully submitted,

**KWAME RAOUL**
Attorney General

60

State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000

Attorneys for Defendants-Appellees/
Cross-Appellants

/s/ Samantha Sherman
**SAMANTHA SHERMAN**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 793-1273 (office)
(773) 590-7803 (cell)
Samantha.Sherman@ilag.gov

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I hereby certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Seventh Circuit Rule 32 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word for Microsoft 365, in 12-point Century Schoolbook BT font, and complies with Seventh Circuit Rule 28.1 in that the brief contains 16,071 words.

/s/ Samantha Sherman
SAMANTHA SHERMAN
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 793-1273 (office)
(773) 590-7803 (cell)
Samantha.Sherman@ilag.gov

**CERTIFICATE THAT ALL REQUIRED MATERIALS ARE INCLUDED IN APPENDIX OF PLAINTIFF-APPELLANT/CROSS-APPELLEE**

I hereby certify under Circuit Rule 30(d) that all of the materials required by Circuit Rule 30(a) and 30(b) are included in the Appendix of Plaintiff-Appellant/Cross-Appellee, and Defendants-Appellees/Cross-Appellants have no additional materials required under Circuit Rule 30(c).

/s/ Samantha Sherman
SAMANTHA SHERMAN
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 793-1273 (office)
(773) 590-7803 (cell)
Samantha.Sherman@ilag.gov

**CERTIFICATE OF FILING AND SERVICE**

I certify that on March 6, 2026, I electronically filed the foregoing Combined

Responsive and Opening Brief of Defendants-Appellees/Cross-Appellants with the

Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by

using the CM/ECF system.

I further certify that other participants in this appeal, named below, are
CM/ECF users, and thus will be served via the CM/ECF system.

Thomas H. Geoghegan,
Despres, Schwartz & Geoghegan

Will W. Bloom,
Despres, Schwartz & Geoghegan

Patrick V. Dahlstrom,
Pomerantz LLP

By:     /s/ Samantha Sherman
        SAMANTHA SHERMAN
        Assistant Attorney General
        115 South LaSalle Street
        Chicago, Illinois 60603
        (312) 793-1273 (office)
        (773) 590-7803 (cell)
        Samantha.Sherman@ilag.gov